# EXHIBIT A

STATE COURT FILE

**SUMMONS - CIVIL**

JD-CV-1  Rev. 2-25
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

**Instructions are on page 2.**

| For information on ADA accommodations, contact the Centralized ADA Office at 860-706-5310 or go to: www.jud.ct.gov/ADA/ |
| --- |

STATE OF CONNECTICUT
JUDICIAL BRANCH
**SUPERIOR COURT**
www.jud.ct.gov



☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☐ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**

By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk *(Number, street, town and zip code)* | Telephone number of clerk | Return Date *(Must be a Tuesday)* |
| --- | --- | --- |
| 123 Hoyt Street, Stamford, CT 06905 | ( 203 ) 965 − 5308 | 07/08/2025 |

| | | At *(City/Town)* | Case type code *(See list on page 2)* | |
| --- | --- | --- | --- | --- |
| ☐ Judicial District | G.A. | **Stamford** | Major: **C** | Minor: **40** |
| ☐ Housing Session | ☐ Number: ___ | | | |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(if attorney or law firm)* |
| --- | --- |
| Hassett & George, P.C. - 945 Hopmeadow Street, Simsbury, CT 06070 | 407894 |

| Telephone number | Signature of plaintiff *(if self-represented)* |
| --- | --- |
| ( 860 ) 651 − 1333 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case. Any attorney who is not exempt from e-filing is required to accept electronic delivery. (Practice Book Section 10-13) ☒ Yes ☐ No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book jalfin@hgesq.com |
| --- | --- |

| Parties | Name *(Last, First, Middle Initial)* and address of each party *(Number; street; P.O. Box; town; state; zip; country, if not USA)* | |
| --- | --- | --- |
| First plaintiff | Name: **Funderz Group, LLC d/b/a Monetafi**<br>Address: **780 E. Main Street, 6th Fl, Stamford, CT 06905** | P-01 |
| Additional plaintiff | Name:<br>Address: | P-02 |
| First defendant | Name: **Sologistics, LLC**<br>Address: **850 N 119th Avenue, Avondale, AZ 85392** | D-01 |
| Additional defendant | Name: **Sologistics, Inc.**<br>Address: **850 N 119th Avenue, Avondale, AZ 85392** | D-02 |
| Additional defendant | Name: **Desverney, David Jr.**<br>Address: **10420 Meadow Lark Ave., Moreno Valley, CA 92557** | D-03 |
| Additional defendant | Name:<br>Address: | D-04 |
| Total number of plaintiffs: 1 | Total number of defendants: 3 | ☐ Form JD-CV-2 attached for additional parties |

**Notice to each defendant**

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
   **The court staff is not allowed to give advice on legal matters.**

| Date 6/13/25 | Signed *(Sign and select proper box)* | ☒ Commissioner of Superior Court | James E. Twdll |
| --- | --- | --- | --- |
| | | ☐ Clerk | |

If this summons is signed by a Clerk:

a. The signing has been done so that the plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law.
c. The court staff is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint.

*For Court Use Only*
File Date

| I certify I have read and understand the above: | Signed *(Self-represented plaintiff)* | Date | Docket Number |
| --- | --- | --- | --- |

Print Form          Page 1 of 2          Reset Form

RETURN DATE: JULY 8, 2025        :        **SUPERIOR COURT**

**FUNDERZ GROUP, LLC DBA MONETAFI**  :        **J.D. OF NORWALK/**
                                          :        **STAMFORD**

**V.**                                           :        **AT STAMFORD**

**SOLOGISTICS, LLC, SOLOGISTICS, INC. AND**  :
**DAVID JR. DESVERNEY**              :        **JUNE 13, 2025**

## COMPLAINT

**COUNT ONE:**        **Breach of contract** (As against **SOLOGISTICS, LLC and SOLOGISTICS, INC..**)

1.     Plaintiff, FUNDERZ GROUP, LLC DBA MONETAFI ("MONETAFI") has a place of business at 780 E. Main Street, 6th Fl, Stamford, CT and registered to conduct business in Connecticut.

2.     Defendant, SOLOGISTICS, LLC, has an address at 10420 Meadow Lark Ave., Moreno Valley, CA 92557 and defendant, SOLOGISTICS, INC. has an address at 850 N 119th Avenue, Avondale, AZ 85392.  The two defendants are referred to together as "SOLOGISTICS."

3.     Defendant, DAVID JR. DESVERNEY ("DESVERNEY") has an address at 10420 Meadow Lark Ave., Moreno Valley, CA 92557.

4.     DESVERNEY owns and controls SOLOGISTICS.

5.     On or about September 20, 2024, MONETAFI, as buyer, and SOLOGISTICS as seller, executed a merchant agreement (the "Agreement"), whereby SOLOGISTICS promised to pay MONETAFI a sum certain for future receivables, as more fully described therein.

6.     DESVERNEY executed the Agreement and a personal performance guaranty in connection with the Agreement (the "Guaranty").

7.     MONETAFI would not have entered the Agreement, but for the Guaranty.

8.     MONETAFI performed its obligations under the Agreement by advancing the funds to SOLOGISTICS as required by the Agreement and has performed its obligations set forth therein.

9.     The Agreement is in default as a result of SOLOGISTICS's failure to make the required payments, despite efforts to reconcile the payments by MONETAFI.  DESVERNEY continues to operate SOLOGISTICS.

10.     The Agreement provides, among other things, that MONETAFI is entitled to collect its reasonable attorney's fees to enforce the Agreement.

11.     SOLOGISTICS and DESVERNEY consented to jurisdiction in Connecticut under the Agreement.

12.     The Agreement permit MONETAFI to recover its attorney's fees to enforce the Agreement.  SOLOGISTICS and DESVERNEY consented to jurisdiction in Connecticut under the Agreement.

13.     As a direct result of the breach, MONETAFI has suffered damages.

**COUNT TWO:**        **Breach of Contract (As against DAVID JR. DESVERNEY)**

1-13.    MONETAFI incorporates and re-alleges paragraphs 1-13 of Count One as Paragraphs 1-13 of Count Two.

14.    DESVERNEY has failed, neglected and/or refused to fully pay MR. A under the Guaranty of the agreement and continues to operate SOLOGISTICS.

15.    DESVERNEY'S failure to pay MONETAFI constitutes a breach of contract.

16.    As a direct result of the breach, MONETAFI has suffered damages.

**WHEREFORE**, the plaintiff claims the following relief:

1.    Monetary damages;

2.    Interest;

3.    Attorney's fees pursuant to the Agreement/Guaranty;

4.    Costs of suit; and

5.    Any and all other relief, legal or equitable, that the court deems just and proper.

**THE PLAINTIFF,**
**FUNDERZ GROUP, LLC DBA MONETAFI**

By:    James E. Trudell, Esq.
       Hassett & George, P.C.
       945 Hopmeadow Street
       Simsbury, CT 06070
       Telephone No.: (860) 651-1333
       Facsimile No.: (860) 651-1888
       Juris No. 407894

RETURN DATE: JULY 8, 2025               :      **SUPERIOR COURT**

**FUNDERZ GROUP, LLC DBA MONETAFI**    :      **J.D. OF NORWALK/**
                                             :      **STAMFORD**

**V.**                                        :      **AT STAMFORD**

**SOLOGISTICS, LLC, SOLOGISTICS, INC. AND**    :
**DAVID JR. DESVERNEY**                  :      **JUNE 13, 2025**

<u>**STATEMENT OF AMOUNT IN DEMAND**</u>

The amount in demand in the above captioned action is greater than $15,000.00.

**THE PLAINTIFF,**
**FUNDERZ GROUP, LLC DBA MONETAFI**

By:                  *James P. Trudell*

James E. Trudell, Esq.
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333
Facsimile No.: (860) 651-1888
Juris No. 407894

OFFICER'S RETURN TO COURT

State of Connecticut )
                   )    ss. Hartford            June 16, 2025
County of Hartford )

Then and by virtue hereof and by direction of the plaintiff's attorney, I made due and legal service upon the within named defendant, **SOLOGISTICS, LLC**, by leaving a verified true and attested copy of the original WRIT, SUMMONS, COMPLAINT, AND STATEMENT OF AMOUNT IN DEMAND, at the office of the Secretary of State of Connecticut, 165 Capitol Avenue, Hartford, Connecticut, statutory agent for service (and paid the Statutory Fee in the amount of $50.00) for the within named defendant, **SOLOGISTICS, LLC**, in accordance with C.G.S. § 52-59b (c).

And also, on the 16th day of June, 2025, I made due and legal service upon the within named defendant, **DAVID JR. DESVERNEY**, by leaving a verified true and attested copy of the original WRIT, SUMMONS, COMPLAINT, AND STATEMENT OF AMOUNT IN DEMAND, at the office of the Secretary of State of Connecticut, 165 Capitol Avenue, Hartford, Connecticut, statutory agent for service (and paid the Statutory Fee in the amount of $50.00) for the within named non-resident defendant, **DAVID JR. DESVERNEY**, in accordance with C.G.S. § 52-59b.

And also, on the 16th day of June, 2025, I made due and legal service upon the within named defendant, **SOLOGISTICS, LLC**, by depositing in the U.S. Post Office via certified mail, postage prepaid, article number 9589 0710 5270 3211 2898 03, one verified true and attested copy of the within original WRIT, SUMMONS, COMPLAINT, AND STATEMENT OF AMOUNT IN DEMAND with my doings upon the Secretary of State thereon endorsed, addressed to **SOLOGISTICS, LLC**, 850 N 119th Avenue, Avondale, AZ 85392.

And also, on the 16th day of June, 2025, I made due and legal service upon the within named defendant, **SOLOGISTICS, INC.**, by depositing in the U.S. Post Office via certified mail, postage prepaid, article number 9589 0710 5270 3211 2900 07, one verified true and attested copy of the within original WRIT, SUMMONS, COMPLAINT, AND STATEMENT OF AMOUNT IN DEMAND addressed to Secretary, **SOLOGISTICS, INC.**, 850 N 119th Avenue, Avondale, AZ 85392.

And also, on the 16th day of June, 2025, I made due and legal service upon the within named defendant, **DAVID JR. DESVERNEY**, by depositing in the U.S. Post Office via certified mail, postage prepaid, article number 9589 0710 5270 3211 2898 10, one verified true and attested copy of the within original WRIT, SUMMONS, COMPLAINT, AND STATEMENT OF AMOUNT IN DEMAND with my doings upon the Secretary of State

Elizabeth J. Ostrowski
Connecticut State Marshal
P.O. Box 1219, Glastonbury, CT 06033-1219 • (860) 965-8463

thereon endorsed, addressed to **DAVID JR. DESVERNEY,** 10420 Meadow Lark Ave., Moreno Valley, CA 92557.

Supplemental Returns to follow.

The within is the original WRIT, SUMMONS, COMPLAINT, AND STATEMENT OF AMOUNT IN DEMAND with my doings hereon endorsed.

Attest:

Elizabeth J. Ostrowski
Connecticut State Marshal
Hartford County

Fees:

| | |
|---|---|
| Service | $ 90.00 |
| Paid Sec. of State | $ 100.00 |
| Paid Postage | $ 29.76 |
| Verified Pages | $ 30.00 |
| Travel | $ 12.00 |
| Endorsements | $ 9.00 |
| TOTAL | $ 270.76 |

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
P.O. BOX 1219, GLASTONBURY, CT 06033-1219 • (860) 965-8463

**APPEARANCE**

JD-CL-12  Rev. 2-25

P.B. §§ 3-1 through 3-12, 10-13, 25-6A, 25a-2, 25a-3

STATE OF CONNECTICUT

**SUPERIOR COURT**

*www.jud.ct.gov*

☐ *I am filing this appearance to let the court and all attorneys and self-represented parties of record know that I have changed my address. My new address is below.*

| Return date *(For Civil/Family cases)* |
|---|
| **Jul-08-2025** |
| Docket Number |
| **FST-CV-25-6074258-S** |

**Name of case** *(Full name of first Plaintiff v. Full name of first Defendant)  Note: In Criminal/Motor Vehicles cases, the Plaintiff is The State of Connecticut*

**FUNDERZ GROUP, LLC D/B/A MONETAFI  v. SOLOGISTICS, LLC Et Al**

| ☐ Housing Session | ☒ Judicial District | ☐ Geographic Area | Address of court *(Number, street, town and zip code)*  **123 HOYT STREET STAMFORD, CT 06905** | Scheduled court date *(Criminal/Motor Vehicle cases only)* |
|---|---|---|---|---|

## Enter the Appearance of

| **Name** *(Your name or name of official, firm, professional corporation, or individual attorney)*  **NATHAN CRAIG ZEZULA** | Juris number *(For attorney/law firm)*  **427748** |
|---|---|

| Mailing address  **750 EAST MAIN STREET SUITE 620** | Post Office box number | Telephone number *(Area code first)*  **203-408-6500** |
|---|---|---|

| City/town  **STAMFORD** | State  **CT** | Zip code  **06902** | Fax number | E-mail address  **nzezula@lmzlegal.com** |
|---|---|---|---|---|

in the case named above for: *(Select one of the following parties)*

**PLAINTIFF**
- ☐ The Plaintiff.
- ☐ All Plaintiffs.
- ☐ The following Plaintiff(s) only:

**DEFENDANT**
- ☐ The Defendant.
- ☒ All Defendants.
- ☐ The following Defendant(s) only:

☐ **Other** *(Specify):* _____

☐ This is a **Family Matters** case (such as divorce, custody, or child support). My appearance is for: *(Select one or both)*
  ☐ matters in the Family Division of the Superior Court     ☐ Title IV-D Child Support matters

☐ This is a **Criminal/Motor Vehicle** case, and I am filing this appearance as ☐ a Public Defender <u>or</u> ☐ Assigned Counsel
☐ This appearance is for the purpose of a bail hearing only.                                    *(Special Public Defender)*
☐ This appearance is for the purpose of alternative arraignment proceedings only.

If an appearance by other counsel or self-represented party is on file for this party/parties, select one option below:

1. ☐ This appearance is in place of the appearance of: _____
   *Name and Juris Number (if applicable) to be replaced*

2. ☐ This appearance is in addition to an appearance already on file.

**I agree that documents can be delivered (served) to me electronically in this case.**   ☒ Yes   ☐ No

*Any attorney who is <u>not</u> exempt from e-filing is required to accept electronic delivery. (Practice Book Section 10-13)*

| Signed *(Individual attorney or self-represented party)*  **427748** | Name of person signing at left *(Print or type)*  **NATHAN CRAIG ZEZULA** | Date signed  **Jul 08 2025** |
|---|---|---|

## Certification

| I certify that a copy of this document was or will immediately be mailed or delivered electronically or non-electronically on *(date)* _____**Jul 08 2025**_____ to all attorneys and self-represented parties of record and that written consent for electronic delivery was received from all attorneys and self-represented parties of record who received or will immediately be receiving electronic delivery. | *FOR COURT USE ONLY* |
|---|---|

Name and address of each party and attorney that copy was or will be mailed or delivered to*

**HASSETT & GEORGE PC - 945 HOPMEADOW STREET/SIMSBURY, CT 06070**

*If necessary, attach additional sheet or sheets with name and address which the copy was or will be mailed or delivered to.

| Signed *(Signature of filer)*  **427748** | Print or type name of person signing  **NATHAN CRAIG ZEZULA** | Date signed  **Jul 08 2025** |
|---|---|---|

**Continuation of JDCL12 Appearance Form for FST-CV-25-6074258-S**

**Submitted By NATHAN CRAIG ZEZULA (427748)**

**Additional Party(ies) (Continued from JDCL12)**

**For these party(ies)**

Pty# D-01 SOLOGISTICS, LLC

Pty# D-02 SOLOGISTICS, INC.

Pty# D-03 DAVID JR. DESVERNEY

**\*\*\*\*\* End of Party List \*\*\*\*\***

FST-CV25-6074258-S

_____

FUNDERZ GROUP, LLC
DBA MONETAFI                            :          SUPERIOR COURT
                                                 :
                PLAINTIFF,               :          JUDICIAL DISTRICT OF
                                                            NORWALK/STAMFORD
                                                 :
v.                                            :          AT STAMFORD
                                                 :
SOLOGISTICS, LLC;
SOLOGISTICS, INC.; AND
DAVID DESVERNEY               :
                                                 :
                DEFENDANTS.       :          JULY 8, 2025
_____

## ANSWER, SPECIAL DEFENSES, and COUNTERCLAIM

Defendants SOLogistics, LLC; SOLogistics, Inc.; and David Desverney (collectively "Defendants" or "Sologistics"), by and through undersigned counsel, hereby sets forth their Answer and Special Defenses to the Complaint dated June 13, 2025 against Funderz Group, LLC d/b/a Monetafi, Inc. ("Monetafi" or "Defendant").

Counterclaim Plaintiff SOLogistics, LLC also hereby sets forth its counterclaim against counterclaim defendant Monetafi, as well as against un-joined and potential counterclaim defendants Culain Capital Funding, LLC ("Culain"), Lanny Vaysman, and Jamie Franz.

**ANSWER**

**COUNT ONE:**  **Breach of Contract (as against SOLOGISTICS, LLC and SOLOGISTICS, INC.)**

1.  Defendants lack information sufficient to form a belief as to the allegations contained in this paragraph, and so leave Plaintiff to its proof. To the extent a response is required, the allegations are denied.

2.  Admit as to the address set forth for Sologistics, LLC, but deny as to the address set forth for Sologistics, Inc.

3.  Admit

4.  Admit

5.  Deny, but admit the existence of the Agreement, which is a document, the terms of which speak for themselves.

6.  Admit

7.  Defendants lack information sufficient to form a belief as to the allegations contained in this paragraph, and so leaves Plaintiff to its proof. To the extent a response is required, the allegations are denied.

8.  Deny

9.  Deny

10. The allegations in this paragraph state a legal conclusion, which does not require a response.  To the extent a response is required, the allegations are denied, but Defendants admit the existence of the Agreement, which is a document, the terms of which speak for themselves.

11. The allegations in this paragraph state a legal conclusion, which does not require a response. To the extent a response is required, the allegations are denied, but Defendants admit the existence of the Agreement, which is a document, the terms of which speak for themselves.

12. The allegations in this paragraph state a legal conclusion, which does not require a response. To the extent a response is required, the allegations are denied, but Defendants admit the existence of the Agreement, which is a document, the terms of which speak for themselves.

13. The allegations in this paragraph state a legal conclusion, which does not require a response. To the extent a response is required, the allegations are denied.

**COUNT TWO:  Breach of Contract (as to David Jr. Desverney)**

1-13.  Defendants incorporate and re-allege the responses to paragraphs 1-13 of Count One as their responses to paragraphs 1-13 of Count Two.

14. Deny

15. The allegations in this paragraph state a legal conclusion, which does not require a response. To the extent a response is required, the allegations are denied.

16. The allegations in this paragraph state a legal conclusion, which does not require a response. To the extent a response is required, the allegations are denied.

## FIRST SPECIAL DEFENSE

Plaintiff misrepresents the amounts due by Defendants to Plaintiff, and therefore the amount due to Plaintiff under the Agreement.  Defendants intend to pursue further the factual basis for this defense during discovery.

## SECOND SPECIAL DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands arising from, *inter alia*, Plaintiff's willful and bad faith conduct in charging usurious and predatory amounts of interest, abuse of process, and for the reasons set forth in the Defendants' Counterclaim.

## THIRD SPECIAL DEFENSE

At the time of its making, the terms of the aforesaid agreement, providing for annual interest payment of 40% were those in which no person in his or her senses would make, on the one hand, and which no fair and honest person would accept, on the other.

## FOURTH SPECIAL DEFENSE

Plaintiff's claims are barred as this Court lacks personal jurisdiction over the Defendants. In this case, Plaintiff relies on a forum selection clause in a merchant cash advance agreement to compel these California defendants to litigate in Connecticut Superior Court.  However, this court should refuse to exercise personal jurisdiction over Defendants due to Plaintiff's overreach and the unreasonableness of a forum selection clause without any meaningful connection between the parties, the contract, and Connecticut.

## COUNTERCLAIM

**Parties and Potential Parties**

1. Counterclaim Plaintiff SOLogistics, LLC ("Plaintiff" or "Sologistics") is a limited liability company organized under the laws of California, with its principal place of business in Moreno Valley, California.

2. Counterclaim Defendant Funderz Group, LLC d/b/a Monetafi. has a principal place of business of 20200 W Dixie Hwy, Aventura, FL.

3. Potential Counterclaim Defendant Culain Capital Funding, LLC is a New York limited liability company with its principal place of business in Buffalo, New York.

4. Upon information and belief, potential Counterclaim Defendant Jamie Franz is a resident of New York.

5. Upon information and belief, potential Counterclaim Defendant Lanny Vaysman is a resident of Florida.

6. Counterclaim Plaintiff intends to assert claims against additional parties who may be liable and who may be joined in this action pursuant to Practice Book § 10-11. For the purpose of this Counterclaim, all Counterclaim Defendants and Potential Counterclaim Defendants are referred to as "Defendants."

## STATEMENT OF FACTS

7. In July 2024, Sologistics, LLC began communicating with a financing broker named Lanny Vaysman, who represented that he worked for a company named Cromwell Capital. At Vaysman's direction, Plaintiff entered into a series of

Merchant Cash Advance ("MCA") loans totaling approximately $1.3 million, spread across several entities.

8. Concurrently, Vaysman introduced Plaintiff to Culain Capital Funding, LLC ("Culain"), a factoring company. Culain indicated that all existing MCA obligations would need to be paid off for it to secure a first-position Uniform Commercial Code (UCC) lien, and represented that Culain would be the solution to SOLogistics's financing problems.

9. Upon information and belief, Vaysman is either an employee of Culain and/or Monetafi, an independent contractor working for Culain and/or Monetafi, or otherwise has a financial relationship with Culain and/or Monetafi such that he benefited from introducing Plaintiff to Culain and Monetafi and inducing Plaintiff to enter into financial agreements with them.

10. At the urging of Vaysman and Culain, Plaintiff entered into a factoring agreement with Culain (the "Factoring Agreement") pursuant to which Culain assumed control of a significant number of Plaintiff's outstanding invoices and accounts receivable.

11. Plaintiff alleges that this coordination between Culain, and later Monetafi, Inc. ("Monetafi"), was the beginning of a broader scheme to force SOLogistics into financial dependency and ultimately enable Culain and Monetafi to execute a hostile takeover.

12. With knowledge of Sologistics's cash flow structure, Defendants coordinated to apply all of Plaintiff's August 2024 receivables to the Monetafi MCA obligations rather than to its operating expenses—despite knowing that the MCAs were not

expected to be repaid in full within 30 days. As a result, Plaintiff was left without access to needed operating capital.

13. Culain also selectively withheld factoring of certain invoices and failed to fully factor Plaintiff's receivables. This constrained liquidity and left Plaintiff searching for additional capital to continue operating.

14. Despite Culain's stated policy that clients under factoring would not be permitted to take out MCA loans, Lanny Vaysman offered to secure additional, albeit expensive, MCA loans through Monetafi for Plaintiff, which he claimed to be able to do because of his relationship with Culain.

15.  Plaintiff soon found itself paying over $64,000 per week in MCA obligations.

16. Both Culain and Monetafi exercised such direct control over the Plaintiff's finances and operations that they often directly paid Plaintiff's vendors and even its employees.

17. In or around November 2024, Plaintiff began to realize that the Defendants were, in fact, working in concert to financially compromise Plaintiff and seize the company.

18. In an attempt to extricate the company from this trap, Plaintiff engaged Rise Alliance ("Rise")  to provide legal and finance counsel to help restructure payments and attempt to free Plaintiff from the control and oppression of Defendants.

19. Rise was able to assist Plaintiff in temporarily reducing weekly debt payments to $33,000 per week. However, Culain continued to obstruct the factoring of invoices, hampering daily operations.

20. In April 2025, after a client of Plaintiff defaulted on approximately $800,000 in invoices, Culain seized on the opportunity to exert full control. It froze all of Plaintiff's accounts receivable and issued an ultimatum: sign a takeover agreement (the "Pontex agreement") or face complete operational shutdown.

21. In communications and conference calls, legal counsel for Culain repeatedly stated that "we are taking over," "life is going to be tough," and "welcome to entrepreneurship."

22. On these calls, representatives of Culain openly discussed replacing Plaintiff on contracts with other logistics companies that Culain had worked with in the past.

23. On April 18, 2025, Plaintiff, with the assistance of Rise, submitted alternative financing plans to the Defendants that would effectively pay off Culain and extricate Plaintiff from their control.

24. In a subsequent call, Jamie Franz of Culain asked how Plaintiff intended to deal with the Monetafi loans, despite the fact that Culain had refused to acknowledge the Monetafi loans in earlier conversations.

25. By late April of 2025, Culain had completely ceased disbursing funds, refusing even to process payroll. As a result, Plaintiff was forced to lay off key employees, default on obligations, and suffer reputational and credit damage.

26. On May 12, 2025, Monetafi served an *ex parte* PJR Prejudgment Remedy and attachment pursuant to Connecticut law on Plaintiff's Bank of America account ending in 7720 (*see infra*)—an account used exclusively by Culain to deposit payroll.  A copy of these documents as served upon Plaintiff is attached hereto as **Exhibit A**.

27. By letter dated May 12, 2025, Bank of America informed Plaintiff that it had in fact debited and restricted this account.  A copy of this letter is attached hereto as **Exhibit B.**

28. As set forth below, this attachment, which was transmitted via interstate mail, constitutes an abuse of process designed to force the takeover of Plaintiff.

29. This specific targeting of a payroll account is further evidence of coordination between Monetafi and Culain to interfere with future receivables and thereby seize control of Plaintiff.

30. Despite being provided with forecasts and financial data, Culain refused to structure payments and receivables to permit Plaintiff to operate, and clearly took these steps to ensure Plaintiff could not operate.

31. On June 4, 2025, Defendants, in furtherance of their scheme, transmitted false and fraudulent communications by interstate wire and mail, including emails, faxes, telephone calls, and letters, to Plaintiff, its customers, vendors, and financial institutions.

32. Defendants also sent defamatory demand letters to Plaintiff's customers, falsely accusing SOLogistics of fraud, double invoicing, and violations of the RICO Act. These statements were false and have caused severe reputational and commercial damage.

33. On information and belief, Defendants' conduct was not incidental but part of a coordinated plan and enterprise to collapse Plaintiff's operations, misappropriate client data, and facilitate a takeover of a thriving renewable energy logistics firm.

Defendants' PJR

34. On or about September 20, 2024, Defendant entered into a merchant cash advance agreement with Monetafi at the urging of, and with the implicit consent of Culain (the "Monetafi MCA Agreement").

35. The Monetafi MCA Agreement purported to allow Defendant to seek an *ex parte* prejudgment remedy (PJR) upon alleged default pursuant to the Connecticut prejudgment remedy statutes, C.G.S. § 52-278a et seq.

36. Monetafi, in a recent trend among MCA companies, maintains an office in Connecticut for the sole purpose of using and abusing the Connecticut prejudgment remedy statutes, and in particular, the ex parte process that applies to commercial transactions.

37. This, despite the fact that few if any of their victim companies have any ties or connections to Connecticut, and despite the fact that Monetafi's principal place of business is in Florida.

38. On or about May 5, 2025, Defendant Monetafi, by and through its attorneys, executed a "Notice of *Ex Parte* Pre-Judgment Remedy," "Writ, Summons and Direction for Garnishment and Attachment," and associated documents and served the same on Bank of America, resulting in the freezing of Plaintiff's bank accounts. See the attached **Exhibit A and B.**

39. It should be noted that Monetafi was able to accomplish this *ex parte* freezing and restraint of Plaintiff's bank account without any judicial oversight or involvement pursuant to C.G.S. § 52-278e and C.G.S. § 52-278f.

40. Despite the foregoing, Defendant did not serve or return the civil summons, complaint, or PJR papers to the court within six days before the return date as required by C.G.S § 52-46a.

41. As a result, no valid underlying action was commenced to support the PJR.

42. Despite the lack of a returned complaint and valid case, Defendant continued to enforce the PJR and, upon information and belief, has not released the hold on Plaintiff's funds and account.

43. Defendants' conduct caused Plaintiff significant economic harm, including lost business opportunities, reputational harm, and costs to access and restore its funds.

## CAUSES OF ACTION

### First Cause of Action
### (Abuse of Process as to Monetafi)

44. Plaintiff repeats and re-alleges the allegations of each of the foregoing paragraphs.

45. Defendant misused the legal process not to vindicate legitimate rights but to coerce, pressure, and destabilize Plaintiff's operations for improper purposes.

46. The legal threats and filings were employed to further the takeover scheme and were not grounded in good faith.

47. Defendant willfully and improperly used the legal process, specifically, the Connecticut Prejudgment Remedy process, for a purpose not intended by law: to coerce payment without pursuing lawful litigation.

48. Defendant never returned the complaint to court, and used the prejudgment remedy process solely to exert economic pressure on Plaintiff.

49. As a direct and proximate result, Plaintiff suffered damages.

50. Plaintiff incurred damages, including legal costs, operational losses, and reputational harm.

## Second Cause of Action
### (Wrongful Prejudgment Remedy (C.G.S. §52-278k) as to Monetafi)

51. Plaintiff repeats and re-alleges the allegations of each of the foregoing paragraphs.

52. The prejudgment remedy obtained by Defendant was wrongful because the Defendant failed to return the complaint to court as required by Connecticut General Statutes § 52-46a.

53. As a result, the PJR was invalid and improperly caused damage to the Plaintiff, including loss of access to funds, disruption of business, and additional financial losses.

## Third Cause of Action
### (Violation of RICO, 18 U.S.C. § 1962(c), as to all Defendants)

54. Plaintiff repeats and re-alleges the allegations of each of the foregoing paragraphs.

55. Defendants, acting as an enterprise, engaged in a pattern of racketeering activity including fraud, wire fraud, extortion, and obstruction of commerce through the wrongful use of purported legal process.

The Unlawful Activity

56. As part of their scheme, Defendants knowingly transmitted or caused to be transmitted by means of wire communication in interstate commerce numerous

false and misleading communications, including but not limited to emails, telephone calls, and facsimile transmissions, to Plaintiff, its customers, vendors, and financial institutions, with the intent to defraud Plaintiff and induce payments on false pretenses. These acts constitute predicate acts of wire fraud in violation of 18 U.S.C. § 1343.

57. Furthermore, Defendants illegally and wrongfully restrained Plaintiff's bank accounts, and in what amounts to an abuse of the Connecticut prejudgment remedy statutes and the interstate mail system. These acts constitute predicate acts of wire fraud in violation of 18 U.S.C. § 1343.

58. Similarly, Defendants sent or caused to be sent false and fraudulent correspondence through the postal service and private commercial interstate carriers to Plaintiff and third parties, furthering their scheme to defraud, in violation of 18 U.S.C. § 1341.

Culpable Persons

59. Defendants Vaysman and Franz are "persons" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(c) in that each is an individual capable of holding a legal interest in property.

60. Upon information and belief, Franz is the owner of Culain Capital.

61. Upon information and belief, Vaysman is an employee, independent contractor, or is otherwise financially compensated by both Culain and Monetafi.

The Enterprise

62. Defendants Vaysman, Franz, Culain, and Monetafi constitute an Enterprise (the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

63. The Enterprise is associated in fact for the common purpose of carrying on an ongoing unlawful enterprise. Specifically, the Enterprise has a common goal of soliciting companies in financial distress for factoring and MCA services and then using coordinated and illegal methods to seize control of said companies.

64. The members of the Enterprise have ongoing relationships, communication, coordination, and, upon information and belief, agreements relating to utilizing illegal means to prey upon and seize control of companies in financial distress throughout the United States.

65. The Enterprise had continuity and structure, and its activities affected interstate commerce.

66. The Enterprise's conduct constitutes "fraud by wire" within the meaning of 18 U.S.C. 1343, which is "racketeering activity" as defined by 18 U.S.C. 1961(1). Its repeated and continuous use of such conduct to participate in the affairs of the Enterprise constitutes a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

<u>The Roles of the RICO Persons in Operating the Enterprise, the Roles of the Individual Companies within the Enterprise.</u>

67. Defendants Vaysman and Franz ("RICO Persons") have organized themselves and the Enterprise into a cohesive group with specific and assigned responsibilities and a command structure to operate as a unit in order to accomplish the common goals and purposes of collecting upon unlawful debts, unlawfully control of including as follows:

68. Upon information and belief, Franz and Vaysman are the principals of the Enterprise. They are responsible for the day-to-day operations of the Enterprise and have the final say on all business decisions of the Enterprise, including, without limitation, which companies the Enterprise will target, how Culain, Monetafi and other partners will coordinate efforts to make sure said companies cease operating and cede control to the Enterprise.

69. Upon information and belief, Vaysman is a principal broker/salesperson who fraudulently induces victims like Plaintiff into signing with Culain and Franz, presumably for a commission.  Once Culain manages to create further financial chaos, he then suggests that the victims take out usurious MCA loans with other Enterprise members, such as Monetafi, who then coordinate with the Enterprise to seize control of these victim companies.

70. All of the RICO Persons have benefited from the Enterprise's coordinated efforts to lure financially stressed victim companies into factoring and MCA agreements which the Enterprise then uses to seize control of the victim companies.

71. Pursuant to the Enterprise, Culain has manipulated the finances and accounts payable of companies, including Plaintiff, so that they will default on MCA loans held by Monetafi and other Enterprise members.

72. Pursuant to the Enterprise, Monetafi extends MCA loans to clients of Culain that they know will be unable to satisfy as a result of manipulations by Enterprise member Culain.  Once the victim companies default on the MCA loans, Monetafi abusively and illegally uses the Connecticut prejudgment remedy statutes to seize accounts, ex parte and without any judicial review or oversight.

73. Monetafi maintains an office in Connecticut for the sole purpose of using and abusing these Connecticut prejudgment remedy statutes, even though neither Monetafi nor the victim companies have any real connection to Connecticut.

74. Plaintiff suffered injury to business and property as a direct result of these violations.

Interstate Commerce

75. The Enterprise is engaged in interstate commerce and uses instrumentalities of interstate commerce in its daily business activities.

76. As set forth, *supra*, Monetafi maintains a principal place of business in Florida, but has an office in Connecticut for the sole purpose of using and abusing the Connecticut prejudgment remedy statutes.  For this reason, its MCA agreements include Connecticut choice of law provisions and Connecticut forum selection clauses. Monetafi, Culain, and the Enterprise prey upon companies located across the United States.

77. As set forth, *supra*, Culain has a principal place of business in New York but, as part of the coordinated efforts of the Enterprise, preys upon companies located across the United States.

78. Communications between Plaintiff and members of the Enterprise were by interstate email and mail, wire transfers or ACH debits and other interstate wire communications. Specifically, the Enterprise used interstate emails to originate, underwrite, service and collect upon the agreements, fund the advances under each of the agreements and collect the payments via interstate electronic ACH debits. The members of the Enterprise also used interstate mail to unlawfully restrain the Plaintiff's bank accounts.

Injury and Causation

79. Plaintiff has and will continue to be injured in their business and property by reason of the Enterprise's violations of 18 U.S.C. § 1962(c), in an amount to be determined at trial.

80. Injuries to the Plaintiff directly, proximately, and reasonably foreseeably resulting from or caused by these violations of 18 U.S.C. § 1962(c) include, but are not limited to, funds unlawfully seized through the Connecticut PJR procedure, damage to the Plaintiff business in the form of lost profits, damage and loss of reputation, and financial loss resulting from the coordination of Enterprise members to maximize the costs, fees, and financial chaos resulting from the factoring and MCA agreements.

81. Plaintiff has also suffered damages by incurring attorneys' fees and costs associated with exposing and prosecuting Defendants' criminal activities.

82. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages, plus costs and attorneys' fees from Defendants.

## Fourth Cause of Action
**(Violation of RICO, 18 U.S.C. § 1962(b), as to all Defendants)**

83. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

84. Defendants, through a pattern of racketeering activity as described herein, knowingly acquired and maintained an interest in, and exercised control over, Plaintiffs.

85. Defendants sought to financially ruin Plaintiff and thereby coercively gain control over Plaintiff's business operations and interests, constituting an unlawful acquisition and maintenance of control of the Plaintiff in violation of 18 U.S.C. § 1962(b).

86. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages in an amount to be proven at trial, including but not limited to loss of business, reputation, and economic harm.

87. Plaintiff is entitled to recover all damages, costs, and attorneys' fees as provided by law, including treble damages pursuant to 18 U.S.C. § 1964(c).

## Fifth Cause of Action
**(Conspiracy to Violate RICO, 18 U.S.C. § 1962(d) as to all Defendants)**

88. Plaintiff repeats and re-alleges the allegations of each of the foregoing paragraphs.

89. Defendants agreed and conspired to conduct and participate in the enterprise's affairs through a pattern of racketeering activity.

90. Acts in furtherance of the conspiracy included the manipulation of loan terms, threats of litigation, seizure of receivables, and false communications with clients and vendors.

91. Plaintiff was injured by overt acts committed in furtherance of the conspiracy.

### Sixth Cause of Action
### (Violation of Connecticut Unfair Trade Practices Act (CUTPA) as to all Defendants)

92. Plaintiff repeats and re-allege the allegations of each of the foregoing paragraphs.

93. Defendants' conduct as described above constitutes unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of General Statutes § 42-110b(a).

94. Defendants engaged in business practices that offend public policy, are immoral, oppressive, unscrupulous, and cause substantial injury to merchants and consumers.

95. Plaintiff has suffered an ascertainable loss of money or property as a result of Defendant's unfair and deceptive practices.

96. Plaintiff suffered ascertainable loss of money, goodwill, and future business opportunities.

### Seventh Cause of Action
### (Tortious Interference with Business Relationships)

97. Plaintiff repeats and re-allege the allegations of each of the foregoing paragraphs.

98. Plaintiff had valid, ongoing business relationships and expectancies with customers and financial partners.

99. Defendants, with knowledge of these relationships, intentionally and improperly interfered by withholding funds, spreading falsehoods, and asserting unlawful liens.

100. The interference was unjustified and directly caused economic harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a. Treble damages pursuant to 18 U.S.C. § 1964(c);

b. Damages pursuant to General Statutes § 52-278k;

c. Punitive damages pursuant to § 42-110g(a);

d. Compensatory damages;

e. Attorneys' fees and costs;

f. Any other relief as the Court deems just and proper.

Respectfully submitted,

*Defendants and Counterclaim Plaintiff*

By: _____

Nathan C. Zezula ct27936
Mott Zezula LLC
750 East Main Street
6th Floor
Stamford, CT 06902
(203) 408-6500 (tel.)
(203) 724-4179 (fax)

*Its Counsel*

# EXHIBIT A

**NOTICE OF EX PARTE PRE-**
**JUDGMENT REMEDY/CLAIM FOR**
**HEARING TO DISSOLVE OR MODIFY**

JD-CV-55 Rev. 3-03
C.G.S. §§ 52-278e, 52-278f

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

**Instructions To Plaintiff/Applicant**

| COURT USE ONLY |
| --- |
| **CLPJRX** Ex Parte Application |
| **CLPJRXP** Contest Ex Parte PJR Application |

1. This form MUST be used in connection with ex parte prejudgment remedies issued pursuant to General Statutes § 52-278e, and MAY be used in connection with prejudgment remedies issued in an action upon a commercial transaction pursuant to General Statutes § 52-278f.
2. Complete Section I below and submit to the Clerk along with, and immediately followed by your application and the other required documents for ex parte prejudgment remedy.
3. If prejudgment remedy issued, include this form in the process served on the defendant.

## Section I — Case Information  (To be completed by Plaintiff/Applicant)

| [X] Judicial District | [ ] Housing Session | [ ] Geographical Area number | Court address 123 Hoyt Street, Stamford, CT 06905 |
| --- | --- | --- | --- |

Has a temporary restraining order been requested?  [ ] Yes  [X] No

Amount, legal interest, or property in demand, exclusive of interest and costs is ("X" one of the following)
[ ] Less than $2500
[ ] $2500 through $14,999.99
[X] $15,000 or more

Name of Case *(First-named plaintiff vs. First-named defendant)*
**Funderz Group, LLC d/b/a Monetafi v. Sologistics, LLC**

CLPJRX

| [X] See attached form JD-CV-67 for Continuation Parties | Case type *(From Judicial Branch code list)* MAJOR: **C**  MINOR: **40** | Number counts **2** |
| --- | --- | --- |

("X" if applicable)
[ ] Claiming other relief in addition to or in lieu of money damages

Name and address of Plaintiff/Applicant *(Person making application for Prejudgment Remedy)* *(Number, street, town and zip code)*

**Funderz Group, LLC - 750 E. Main Street, 6th FL, Stamford, CT 06902**

Name and address of Defendant *(Person against whom Prejudgment Remedy is sought)* *(Number, street, town and zip code)*

**Sologistics, LLC - 10420 Meadow Lark Ave., Moreno Valley, CA 92557**

Name and address of any third person holding property of Defendant who is subject to garnishee process preventing dissipation of such property

**Bank of America, N.A.**

| For The Plaintiff(s) Enter The Appearance Of: | Name and address of Attorney, Law Firm or Plaintiff if pro se *(Number, street, town and zip code)* **Hassett & George, P.C. - 945 Hopmeadow Street, Simsbury, CT 06070** | | |
| --- | --- | --- | --- |
| | Telephone number **(860) 651-1333** | Juris number *(if attorney or law firm)* **407894** | Signed *Jame P. Hill* | Date signed **5/8/25** |

## Section II — Notice To Defendant

You have rights specified in the Connecticut General Statutes, including Chapter 903a, that you may wish to exercise concerning this prejudgment remedy. These rights include the right to a hearing:

(1) to object to the prejudgment remedy because you have a defense to or set-off against the action or a counterclaim against the plaintiff or because the amount of the prejudgment remedy allowed by the court is unreasonably high or because payment of any judgment that may be rendered against you is adequately secured by any insurance that you may have;

(2) to request that the plaintiff post a bond in accordance with section 52-278d of the General Statutes to secure you against any damages that may result from the prejudgment remedy;

(3) to request that the prejudgment remedy be dissolved or modified or that you be allowed to substitute a bond for the prejudgment remedy; and

(4) to show that the property subject to the prejudgment remedy is exempt from such prejudgment remedy.

You may request a hearing to move to dissolve or modify the prejudgment remedy. The hearing may be requested by any proper motion or by completing section III below and returning this form to the superior court at the Court Address listed above.

## Section III — Defendant's Claim And Request For Hearing  (To be completed by Defendant)

I, the defendant, request a hearing to dissolve or modify the prejudgment remedy, and claim:
("X" the appropriate boxes)

[ ] a defense, counterclaim, set-off, or exemption.
[ ] that any judgment that may be rendered is adequately secured by insurance.
[ ] that the amount of the prejudgment remedy is unreasonably high.
[ ] that the plaintiff be required to post a bond to secure me against any damages which may result from the prejudgment remedy.
[ ] that I be allowed to substitute a bond for the prejudgment remedy.

CLPJRXP

| FOR COURT USE ONLY |
| --- |

I certify that a copy of the above claim was mailed/delivered to the Plaintiff or the Plaintiff's attorney on the Date Mailed or Delivered shown below.

A TRUE COPY ATTEST:
ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

| Date mailed or delivered | Signed *(Defendant)* | Date signed |
| --- | --- | --- |
| Type or print name and address of Defendant | | Docket number PJR CV |
| Name of each party served* | Address at which service was made* | |

*If necessary, attach additional sheet with names of each party served and the address at which service was made.

| Print Form | | Reset Form |

**CONTINUATION OF PARTIES**
JD-CV-67  Rev. 5-21

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov



First named plaintiff (Last, first, middle initial)

**Funderz Group, LLC d/b/a Monetafi**

First named defendant (Last, first, middle initial)

**Sologistics, LLC**

## Additional Plaintiffs

| Name (Last, first, middle initial, if individual) | Address (Number, street, town and zip code) |
| --- | --- |
| | |

## Additional Defendants

| Name (Last, first, middle initial, if individual) | Address (Number, street, town and zip code) |
| --- | --- |
| Sologistics, Inc.<br>Desverney, David Jr. | 850 N 119th Avenue, Avondale, AZ 85392<br>10420 Meadow Lark Ave., Moreno Valley, CA 92557 |

For Court Use Only

Docket number

**CONTINUATION OF PARTIES**

Print Form

Reset Form

RETURN DATE: JUNE 10, 2025          :     SUPERIOR COURT

FUNDERZ GROUP, LLC DBA MONETAFI    :     J.D. OF NORWALK/
                                           STAMFORD

V.                                           :     AT STAMFORD

SOLOGISTICS, LLC, SOLOGISTICS, INC. AND   : 

DAVID JR. DESVERNEY               :     MAY 8, 2025

## WRIT, SUMMONS AND DIRECTION FOR GARNISHMENT OR ATTACHMENT

TO ANY PROPERY OFFICER:  BY AUTHORITY OF THE STATE OF

CONNECTICUT,

THE AGREEMENT ATTACHED HERETO THAT IS THE SUBJECT OF THIS

APPLICATION IS A <u>COMMERCIAL TRANSACTION</u>.

UNDER THE SAID AGREEMENT, THE DEFENDANT(S) CONSENT TO THE

JURISIDCTION OF CONNECTICUT.  UNDER SECTION XX.l. OF THE SAID

COMMERCIAL AGREEMENT DEFENDANT(S) AGREED TO PROCEDURLLY

WAIVE ANY RIGHT TO A NOTICE AND HEARING UNDER CHAPTER 903A OF

THE CONNECTICUT GENERAL STATUTES OR OTHER STATUTES OR

STATUTES AFFECTING PREJUDGMENT REMEDIES AND AUTHORIZES

PLAINTIFF'S ATTORNEY TO ISSUE A WRIT FOR A PREJUDGMENT REMEDY

WITHOUT COURT ORDER AND WITHOUT THE NECESSITY OF POSTING A

BOND OR OTHER SECURITY, PROVIDED THE COMPLAINT SHALL SET FORTH

A COPY OF THIS WAIVER.  THEREFORE, THIS APPLICATION IS REQUESTED

EX-PARTE PURSUANT TO C.G.S. §52-278E(A) AND C.G.S. §52-278F AND UPON

PLAINTIFF'S AFFIDAVIT IN SUPPORT OF AN EX-PARTE PREJUDGMENT REMEDY.

UNDER THE SAID COMMERCIAL AGREEMENT, AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, THE DEFENDANTS ALSO ACKNOWLEDGED, AGREED AND CONSENTED THAT PLAINTIFF MAY ATTACH OR GARNISH ANY AND ALL OF THEIR MONEY/ACCOUNTS/FUNDS HELD IN ANY BANK ACCOUNT AT A BANKING INSTITUTION IF THAT BANKING INSTITUTION HAS A BRANCH/OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS REGISTERED TO CONDUCT BUSINESS IN CONNECTICUT.

You are hereby commanded to summon the defendants, SOLOGISTICS, LLC, having an address at 10420 Meadow Lark Ave., Moreno Valley, CA 92557, SOLOGISTICS, INC., having an address at 850 N 119th Avenue, Avondale, AZ 85392 and DAVID JR. DESVERNEY, having an address at 10420 Meadow Lark Ave., Moreno Valley, CA 92557, to appear before the Superior Court for the Judicial District of Stamford/Norwalk, 123 Hoyte Street, Stamford, Connecticut, on June 10, 2025, such appearance to be made by the Defendants' attorney by filing a written statement of appearance with the clerk of the court on or before the second day following the return date, then and there to answer unto FUNDERZ GROUP, LLC DBA MONETAFI, having a place of business at 750 E. Main Street, 6th fl,

Hassett & George, P.C.    945 Hopmeadow Street, Simsbury, CT 06070    2
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

Stamford, CT 06902, in a civil action wherein the Plaintiff complains and alleges as set forth in the accompanying complaint.

And you are hereby further commanded to serve a true and attested copy of this writ and of the accompanying Affidavit and Complaint on **BANK OF AMERICA, N.A.** as their agent, trustee and/or debtor of the Defendants and may be indebted to the said Defendants.

And you are further commanded, in accordance with the accompanying Affidavit of Debt, to attach to the value of **$3,107,544.00** of the goods, accounts, property and estate of the Defendants herein, anywhere located, including funds at **BANK OF AMERICA, N.A**

And you are further commanded to summon these garnishees that are currently holding funds of and/or indebted to the defendant to appear before the court at the time and place above mentioned, then and there to disclose on oath whether they have concealed in its hands the goods or estate of the said Defendant(s), or are indebted to the Defendant(s).

WHEREFORE, the Plaintiff claims monetary damages in excess of $14,999, plus interest, costs of suit, attorneys' fees and any and all other relief, legal or equitable, that the Court deems just and proper.

Donna Pare of 945 Hopmeadow Street, Simsbury, Connecticut, is recognized in the sum of $250.00 to prosecute this action.

I hereby certify that I have personal knowledge of the financial responsibility of the Plaintiff and deem it sufficient to pay the costs of this action.

Hereof fail not, but due service and return make.

Dated at Simsbury, Connecticut this 8th day of May, 2025.

James E. Trudell, Esq.
Commissioner of the Superior Court

Please enter the appearance of:
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333 x105
Facsimile No.: (860) 651-1888
Juris No.: 407894
Attorneys for Plaintiff

James E. Trudell, Esq.
Commissioner of the Superior Court

A TRUE COPY
ATTEST:
ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

Hassett & George, P.C.   945 Hopmeadow Street, Simsbury, CT  06070    4
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

RETURN DATE: JUNE 10, 2025      :    **SUPERIOR COURT**

FUNDERZ GROUP, LLC DBA MONETAFI   :    **J.D. OF NORWALK/**

                                                  :    **STAMFORD**

V.

SOLOGISTICS, LLC, SOLOGISTICS, INC. and   :    **AT STAMFORD**

DAVID JR. DESVERNEY                         :

## AFFIDAVIT OF DEBT

STATE OF New York          :

                              :      ss.

COUNTY OF Queens       :

I, Michael Kay, being duly sworn, hereby deposes and say:

1.     I am over the age of eighteen (18) years and understand and believe in the obligation of an oath.

2.     I am a merchant account manager for FUNDERZ GROUP, LLC DBA MONETAFI ("MONETAFI" or the "Company"), and I have personal knowledge as to the debts owed from the defendants SOLOGISTICS, LLC, SOLOGISTICS, INC. (together "SOLOGISTICS") and DAVID JR. DESVERNEY ("DESVERNEY") to the Company.

3.     DESVERNEY owns and controls SOLOGISTICS.

4.     On or about September 20, 2024, MONETAFI, as buyer, and SOLOGISTICS as seller, executed a merchant agreement (the "Agreement"), whereby SOLOGISTICS promised to pay MONETAFI a sum certain for future receivables, as more fully described therein. A true and accurate copy of the Agreement is attached hereto as **Exhibit A.** DESVERNEY

executed the Agreement and a personal performance guaranty in connection with the Agreement (the "Guaranty").

5 MONETAFI would not have entered the Agreement, but for the Guaranty.

6. MONETAFI performed its obligations under the Agreement by advancing the funds to SOLOGISTICS as required by the Agreement and has performed its obligations set forth therein.

7. The Agreement is in default as a result of SOLOGISTICS's failure to make the required payments, despite efforts to reconcile the payments by MONETAFI. DESVERNEY continues to operate SOLOGISTICS.

8. The Agreement provides, among other things, that MONETAFI is entitled to collect its reasonable attorney's fees to enforce the Agreement.

9. SOLOGISTICS and DESVERNEY consented to jurisdiction in Connecticut under the Agreement.

10. Furthermore, Section XX.1. of the Agreement contains a Connecticut Commercial Waiver with regards to prejudgment remedies, which is incorporated by reference herein and provides as follows:

**PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT EXCEEDS $250,000.**

**IMPORTANT NOTICE - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE**

ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.

a. EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

    1. THIS AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

    2. WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY UPON OR AFTER COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

    3. WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

c. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) EXCEEDS $250,000, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 DO NOT APPLY TO THIS AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER UPON OR AFTER COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH XX(j), INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY.

11.     MONETAFI seeks a prejudgment remedy attachment against SOLOGISTICS and DESVERNEY, jointly and severally, as follows:

| | |
|---|---|
| Outstanding Balance: | $3,032,544.00 |
| Anticipated legal fees/costs: | $   75,000.00 |
| Total: | $ 3,107,544.00 |

12.     As a result of SOLOGISTICS and DESVERNEY'S breach of the Agreement, there is probable cause that a judgment in the amount of the said balance, $3,032,544.00, plus reasonable legal's fees, as anticipated above, will be rendered in favor of the plaintiff, MONETAFI.

13.     I am not aware of any valid defenses, off-sets or counterclaim to MONETAFI'S claim for damages and that I believe that there is probable cause that a judgment will enter in favor of the Company.

AFFIANT,

Subscribed and sworn to before me this 8th day of May , 2025.

Print Name: MARISELA INTRIAGO
Notary Public
My Commission Expires 02-25-2027

MARISELA INTRIAGO
Notary Public- State of New York
No. 01IN6387948
Qualified in Queens County
My Commission Expires 02/25/2027

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013    EXHIBIT "A"    MK-7824



## Future Receivables Sale and Purchase Agreement Requirements:

- Please review and verify your bank account information where indicated, or if it is missing, fill in the correct information on page 17of the agreement.
- MAKE SURE ALL THE REFERENCES ARE FILLED OUT ON THE PAGE 20
- Please return:
  - CC Processing Statement or A/R Report
  - Proof of business that has the company EIN for confirmation (IRS Doc, K-1, Tax return)
  - No notary needed just clear signed documents

## Please fill in the below:

Merchant contact information:

Name: DAVID JR DESVERNEY

Email: ███████████████

Preferred phone number: ████████

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



750 E MAIN ST 6TH FLOOR STAMFORD CT 06902

## FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT

This Future Receivables Sale and Purchase Agreement (the "Agreement"), dated 09/20/2024, by and between MONETAFI(the "Purchaser") and the seller(s) listed herein(collectively, the "Seller") (all capitalized terms shall have the meanings ascribed to them below):

**Business Legal Name:** SOLOGISTICS LLC and the entities listed on "Exhibit D"

**D/B/A:** SOLOGISTICS                                    **EIN #:** ███████

**Form of Business Entity:** Limited Liability Company

**Physical Address:** 10420 MEADOW LARK AVE    City: MORENO VALLEY    State: CA    Zip: 92557

**Mailing Address:** 10420 MEADOW LARK AVE    City: MORENO VALLEY    State: CA    Zip: 92557

| PURCHASE PRICE: | PURCHASED AMOUNT: | SPECIFIED PERCENTAGE: | INITIAL INSTALLMENT: | TOTAL FEES: | NET AMOUNT: |
|---|---|---|---|---|---|
| $2,650,000.00 | $3,972,350.00 | 21.76% | $62,500.00/weekly | $140,035.00 | $149,953.62 |

**FOR THE SELLER #1**

Signed by:

By: *DAVID JR DESVERNEY*
    80A08B054E9B4FB...

Name: DAVID JR DESVERNEY

Title: Owner

Email: ███████

Business Phone: ███████

**FOR THE SELLER #2**

By: _____

Name: _____

Title: _____

Email: _____

Business Phone: _____

*Accurate contact information is required to provide the Seller with important information regarding the Agreement.

**OWNER/GUARANTOR #1**

Signed by:

By: *DAVID JR DESVERNEY*
    80A08B954E9B4FB...

Name: DAVID JR DESVERNEY

SSN: ███████

Phone: ███████

Address: 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557

**OWNER/GUARANTOR #2**

By: _____

Name: _____

SSN: _____

Phone: _____

Address: _____

Initial

DJD

Guarantor #1 Initials: [DJD]        Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

WHEREAS, the purpose of this Agreement is to set forth the terms and conditions in relation to the purchase of future receivables from the Seller;

WHEREAS, the Seller is entering into this Agreement voluntarily and has had ample opportunity to review this Agreement prior to executing it;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and for other valuable consideration, the sufficiency of which is agreed to by the parties hereto, the Purchaser and the Seller (collectively, the Parties"), hereby agree as follows:

I.    **BASIC TERMS AND DEFINITIONS.**

a.  "**Applicable Fees**": all initial costs and fees that Seller agrees to pay to the Purchaser as consideration. The total sum of the Applicable Fees shall be deducted from the Purchase Price prior to Seller receiving the funds from the Purchase Price (as defined below);

b.  "**Bank Change Fee**": In the event the Seller requests a change in bank accounts for the ACH payments, a $50.00 bank change fee shall be added;

c.  "**Wire Fee**": In the event a Seller shall request a Fed Wire, a $50.00 wire fee shall be added;

d.  "**ACH Program Fee**": The total amount per month Seller shall pay for the duration of the Agreement towards the ACH Program;

e.  "**UCC Filing Fee**": The total amount Seller shall reimburse Purchaser for the UCC filing associated with this Agreement;

f.  "**Collection Fees and Costs**": In the event the Seller or Guarantor breaches the terms of this Agreement, the Seller and/or Guarantor shall be liable for Purchaser's reasonable attorney's fees and costs of collection and/or to enforce any term in the Agreement, in addition to any other damages awarded by a court.

g.  "**Bank Holiday**": Business Days (as defined below) in which major banks are closed for business;

h.  "**Business Day**": Monday through Friday, with the exception of bank holidays;

i.  "**Daily Receipts**": the amount of Future Receipts (as defined below) received by Seller on a daily basis;

j.  "**Effective Date**": the date set forth in the preamble of this Agreement;

k.  "**Future Receipts**": all of the Seller's receipts of monies for the sale of its goods and services after the Effective Date of this Agreement;

l.  "**Net Amount**": the consideration transferred to Seller after the Applicable Fees, Origination Fees. and/or the Prior Balance (as defined below) are deducted;

m.  "**Obligations**": the terms and conditions the Purchaser is bound to under this Agreement;

n.  "**Origination/Underwriting Fee**": the agreed upon fee between the Seller and a third-party Broker, which shall be deducted from the Net Amount. This fee is to cover the expenses associated with origination, underwriting and related expenses pursuant to this Agreement. If for any reason the Purchaser, in their sole capacity, decides to cancel the deal, the Parties agree the Seller is still responsible for this fee;

o.  "**Parties**": collectively, the Purchaser, Merchant, Personal Guarantor and Seller;

p.  "**Prior Balance**": Outstanding balance on a previous executed Agreement between the Parties;

q.  "**Purchased Amount**": the total amount of the Specified Percentage of the Future Receipts that the Seller shall be under obligation to deliver and permit Purchaser to debit pursuant to this Agreement;

r.  "**Purchase Price**": the total amount that the Purchaser has agreed to pay for the Purchased Amount;

s.  "**Scheduled Remittance**": the fixed amount that the Parties agree to be a good faith approximation of the Specified Percentage (as defined below) of the Seller's Daily Receipts. Scheduled Remittance shall begin on 09/20/2024 and be processed daily. In the event a Scheduled Remittance is due on a banking holiday, Purchaser shall schedule an additional payment on the previous business day prior to said banking holiday;

t.  "**Specified Percentage**": 21.76% of each and every sum from sales made by the Seller of Future Receipts.

u.  "**Total Fees**": the total of all fees deducted or withheld at disbursement

v.  "**Closing Costs**": the total of the Applicable Fee, the Prior Balance and the Origination Fee,

II.   **TERM.**    This Agreement does not have a fixed duration and shall expire upon the date when the Purchased Amount and all other sums due to the Purchaser are paid in full ("Expiration Date").

III.  **SALE OF PURCHASED FUTURE RECEIPTS.**    Seller hereby irrevocably assigns, transfers and conveys onto Purchaser all of the Seller's right, title and interest in the Specified Percentage of the Future Receipts until the Purchased Amount shall have been delivered by Seller to Purchaser ("Purchased Future Receipts"). This sale of the Purchased Future Receipts is made without express or implied warranty to Purchaser of collectability of the Purchased Future Receipts by Purchaser and without recourse against Seller and/or Guarantor(s), except as specifically set forth in this Agreement. By virtue of this Agreement, Seller transfers to Purchaser full and complete ownership of the Purchased Future Receipts and Seller retains no legal or equitable interest therein.

IV.   **PAYMENT OF PURCHASE PRICE.**    As good faith consideration, Purchaser agrees to pay to Seller the Purchase Price, less any Applicable Fees, Prior Balance (if applicable) and Origination Fees, upon execution of this

Page 3 of 27    Guarantor #1 Initials: _DJD_    Guarantor #2 Initials: ____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

Agreement.

V.      **USE OF PURCHASE PRICE.** Seller hereby acknowledges and understands that: (i) Purchaser's ability to collect the Purchased Amount (or any portion thereof) shall be contingent upon Seller's continued operation of its business and successful generation of the Future Receipts until the Purchased Amount is delivered to Purchaser in full; and (ii) in the event of decreased efficiency or total failure of Seller's business, Purchaser's receipt of the full or any portion of the Purchased Amount may be delayed indefinitely. Based upon the forgoing, Seller agrees to use the Purchase Price exclusively for the benefit and advancement of Seller's business operations and for no other purpose.

VI.     **INITIAL DAILY INSTALLMENTS OF PURCHASED AMOUNTS.** The Purchased Amount shall be delivered by the Seller to the Purchaser daily in the amount of the Initial Daily Installment on each Business Day commencing on the Effective Date. In the event a Scheduled Remittance is due on a Bank Holiday in which Purchaser's ACH processor does not process payments, Purchaser shall schedule an additional ACH payment on the Business Day immediately preceding said Bank Holiday.

VII.    **APPROVED BANK ACCOUNT AND CREDIT CARD PROCESSOR(S).**     During the term of this Agreement, the Seller shall: (i) deposit all Future Receipts into one (and only one) bank account, which shall be preapproved by the Purchaser (the "Approved Bank Account"); (ii) use one (and only one) credit card processor, which shall be preapproved by the Purchaser (the "Approved Processor"); and (iii) deposit all credit card receipts into the Approved Bank Account. In the event the Approved Bank Account or Approved Processor shall become unavailable or shall cease to operate during the term of this Agreement, Seller shall arrange for another Approved Bank Account or Approved Processor within twenty-four (24) hours.

VIII.   **AUTHORIZATION TO DEBIT APPROVED BANK ACCOUNT.** The Seller hereby authorizes the Purchaser to initiate electronic payments or ACH debits from the Approved Bank Account in the amount of the Initial Daily Installment on each Business Day commencing on the Effective Date until the Purchaser receives the full Purchased Amount. The Parties agree that the Seller shall provide Purchaser with all access code(s) for the Approved Bank Account.

IX.     **FEES ASSOCIATED WITH DEBITING APPROVED BANK ACCOUNT.** All fees, charges and expenses incurred by either Party due to rejected electronic checks, failed ACH debit attempts, overdrafts or rejections by Seller's banking institution shall be the sole responsibility of the Seller.

X.      **RECONCILIATION.**

   a.   **Seller's Right for Reconciliation.** The Parties each acknowledge and agree that:
        i.   If at any time during the term of this Agreement Seller shall experience unforeseen decreases to their Daily Receipts, the Seller shall have the right, at its sole and absolute discretion, to request a modification to their Scheduled Remittance.
        ii.  Such modification to their Scheduled Remittance (the "Reconciliation") shall be performed by the Purchaser within five (5) Business Days following the written request by Seller for said Reconciliation.

   b.   **Reconciliation Procedure.**
        i.   Seller shall submit a written request for Reconciliation via email to Collections@monetafi.com, Michael@monetafi.com with the subject line, "REQUEST FOR RECONCILIATION";
        ii.  Said written request shall include a copy of the Seller's most recent bank statement and credit card processing statement;
        iii. The Purchaser shall have five (5) Business Days to review the Request for Reconciliation.

   c.   **Warranties.** The Seller shall have the right to request Reconciliation as many times during the term of this Agreement as it deems proper. Nothing set forth in this Agreement shall be deemed to provide the Seller with the right to interfere with the Purchaser's right and ability to debit the Approved Bank Account while the request for Reconciliation is pending or until the Purchased Amount is collected by the Purchaser in full; or modify the amount of the Initial Daily Installment for any calendar month without prior approval of all Parties.

XI.     **SELLER'S RIGHT TO ACCELERATE REMITTANCE OF THE OUTSTANDING PORTION OF THE PURCHASED AMOUNT OF FUTURE RECEIPTS ("OUTSTANDING PAFR").**

   a.   Seller shall have the right, at any time after receipt of the Purchase Price and upon obtaining Purchaser's prior written consent to accelerate the delivery of the undelivered portion of the Purchased Amount of Future Receipts (the "Outstanding PAFR") so long as:

Initial

[DJD]

Guarantor #1 Initials:                          Guarantor #2 Initials:

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

    i.  the Outstanding PAFR is paid in full;

    ii.  such notice shall be in writing stating the exact amount due and delivery date of payment; and

    iii.  Initial Daily Installments continue as schedule until the Outstanding PAFR is paid to the Purchaser.

b.  Upon proper delivery of the Outstanding PAFR to Purchaser and written confirmation by Purchaser, Seller's obligations to the Purchaser shall be deemed completed and fulfilled.

## XII.    PURCHASER'S RIGHTS AND OBLIGATIONS UPON RECEIPT OF OUTSTANDING PAFR.

a.  Purchaser shall notify the Approved Bank Account and cease Initial Daily Installments or Adjusted Daily Installments payments to Purchaser's bank account within three (3) business days.

b.  In the event Purchaser shall receive Initial Daily Installments or Adjusted Daily Installments after the Accelerated Delivery Date, Purchaser shall immediately:

    i.  Return to Seller the total sum of the Initial Daily Installments or Adjusted Daily Installment payments received after the delivery of the Outstanding PAFR to Purchaser; or

    ii.  Apply the total sum of the Initial Daily Installments or Adjusted Daily Installments received by Purchaser after the Accelerated Delivery Date toward Seller's outstanding financial obligations to Purchaser existing as of the Accelerated Delivery Date.

c.  Seller acknowledges and agrees that the Purchaser shall have the right to apply the total sum of the Initial Daily Installments or Adjusted Daily Installments received by the Purchaser after the Accelerated Delivery Date toward Seller's outstanding financial obligations between the Parties.

## XIII.    RISK SHARING ACKNOWLEDGMENTS AND ARRANGEMENTS. The Parties each hereby acknowledge and agree that:

a.  The Purchased Future Receipts represent a portion of Seller's Future Receipts.

b.  This Agreement consummates the sale of the Purchased Future Receipts at a discount, not the borrowing of funds by the Seller from Purchaser. Purchaser does not charge the Seller and will not collect from the Seller any interest on the monies used by the Purchaser for the purchase of the Purchased Future Receipts.

c.  The period of time that it will take the Purchaser to collect the Purchased Amount is not fixed, is unknown to both Parties at this time and will depend on the success of the Seller's business.

d.  The amount of the Initial Daily Installment is calculated based upon the information concerning an average amount of Daily Receipts collected by the Seller's business immediately prior to the Effective Date of this Agreement, as well as representations regarding the Seller's estimated Future Receipts provided by the Seller to the Purchaser.

e.  The amount of Seller's future Daily Receipts may increase or decrease over time.

f.  Seller may not be in breach or in default of this Agreement in the event the full Purchased Amount is not remitted because the Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business.

    i.  EXCEPTION: Seller will be deemed in breach or in default if the Seller's business goes bankrupt or ceases operations due to the Seller's willful or negligent mishandling of its business or Seller purposefully failing to comply with the obligations or this Agreement.

g.  The Purchaser agrees to purchase the Purchased Future Receipts knowing the Seller's business may slow down or fail.

h.  The Purchasers assumes the risk based exclusively upon the information provided to it by the Seller and is detrimentally relying on the Seller's representations, warranties and covenants contained in this Agreement.

i.  The Purchaser hereby acknowledges and agrees that Seller may be excused from performing its obligations under this Agreement in the event Seller's business ceases its operations exclusively due to the following (collectively, the "Valid Excuses"):

    i.  Adverse business conditions that occurred for reasons outside of Seller's control and are not due to Seller's willful or negligent mishandling of its business;

    ii.  Loss of the premises where the business operates due to force majeure, provided that the Seller does not continue or resume business operations in another location;

    iii.  Seller's bankruptcy, so long as the Seller did not fraudulently, willfully or negligently refuse to disclose proper documentation to the Purchaser prior to the execution of this Agreement; or

    iv.  Force majeure.

j.  The Purchaser reserves the right to apply monies received pursuant to this Agreement first toward any fees and then toward the Purchased Amount.

k.  The Parties agree that the Purchase Price is paid to the Seller in consideration for the acquisition of the Purchased Future Receipts and that payment of the Purchase Price by the Purchaser is not intended to be, nor shall it be

Page 5 of 27        Guarantor #1 Initials: _DJD_        Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

construed as a loan from the Purchaser to the Seller that requires absolute and unconditional repayment on a specified maturity date. The Purchaser's ability to receive the Purchased Amount is conditional upon the performance of the Seller's business.

l.   In the event a court shall determine that the Purchaser has charged or received interest hereunder in excess of the highest rate allowed by law, the rate of such interest received by the Purchaser shall automatically be reduced to the maximum rate permitted by applicable law and the Purchaser shall promptly refund to the Seller any excess interest remitted.

XIV.   **APPLICABLE FEES.** The Parties acknowledge the Applicable Fees were agreed upon prior to the Seller entering into this Agreement, were subject to arms-length negotiations between the Parties and a detailed list of the Applicable Fees is set forth in Exhibit A of this Agreement.

XV.   **ORIGINATION FEE.** To the extent that the Seller has agreed to a Broker Fee with a third-party broker, the Seller hereby requests and agrees for the Purchaser to withhold the Broker Fee from the Purchase Price and for the Purchaser to pay the third-party broker directly as per the directive in Rider 3.

XVI.   **NO OTHER REDUCTIONS OF PURCHASE PRICE.** The Seller hereby:

a.   Agrees to pay the Applicable Fee, the Prior Balance and the Origination Fee (collectively, the "**Closing Costs**") in full;
b.   Authorizes the Purchaser to apply a portion of the Purchase Price due to the Seller toward satisfaction of the Seller's obligation to pay the Closing Costs by deducting them from the Purchase Price prior to delivering it to the Seller;
c.   Agrees that deduction of the Closing Costs from the Purchase Price shall not be deemed a reduction of the Purchase Price.

XVII.   **REPRESENTATIONS, WARRANTIES & COVENANTS.** The Seller represents and warrants that as of the Effective Date and during the term of this Agreement:

a.   Financial Condition and Financial Information. The Seller's bank and financial statements furnished to the Purchaser, along with any future statements which may be furnished hereafter, fairly represent the financial condition of the Seller on the date the statements are issued. Prior to the execution of this Agreement, there has been no material adverse changes, financial or otherwise, in the operation or ownership of the Seller. The Seller has a continuing, affirmative obligation to advise the Purchaser of any material adverse change in its financial condition, operation or ownership and/or banking log-in credentials. The Purchaser may request the Seller's bank statements at any time until the Purchased Future Receipts are remitted to the Purchaser and the Seller shall provide such information to the Purchaser within five (5) business days. The Seller's failure to provide such information or blocking access to the Approved Bank Account is deemed a material breach of this Agreement.

b.   Governmental Approvals. The Seller is in compliance and shall remain in compliance with all applicable laws and has the proper valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which its presently engaged.

c.   Good Standing. The Seller is a corporation/limited liability company/limited partnership/or other type of entity ("business entity") that is in good standing and duly incorporated or otherwise organized and validly existing under the laws of its jurisdiction of incorporation or organization, and has the full power and authority necessary to carry its business as it is now being conducted. In the event the business entity is dissolved for any reason, the Seller shall advise the Purchaser within five (5) business days **prior** to the dissolution for any reason. This Agreement shall remain in full effect despite the dissolution of the business entity and any subsequent business entities formed by the Seller(s) may be responsible for the Purchased Future Receipts.

d.   Authorization. The Seller represents has all requisite power to execute, delivery and perform this Agreement and consummate the transactions contemplated hereunder. The Seller also represents and warrants that entering into this Agreement will not result in the breach, violation or default under any other agreement or instrument by which the Seller is bound; nor are any statutes, rules, regulations, orders or other laws to which the Seller is subject to. The Seller further represents and warrants that entering into this Agreement does not require the obtaining of any consent, approval, permit or license from any governmental authority having jurisdiction over the Seller. All organization and other proceedings required to be taken by the Seller to authorize the execution, delivery and performance of this Agreement have already been taken. The Personal Guarantor signing this Agreement on behalf of the Sellers has full power and authority to bind the Seller to perform its obligations under this Agreement.

e.   Accounting Records and Tax Returns. The Seller will treat the receipt of the Purchase Price and payment of the

Page 6 of 27                   Guarantor #1 Initials: DJD                   Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

Purchased Amount in a manner evidencing sale of its future receipts in its accounting records and tax returns and further agrees that the Purchaser is entitled to audit the Seller's accounting records and tax returns upon reasonable notice in order to verify compliance. The Seller hereby waives any rights of privacy, confidentiality or taxpayer privilege in any litigation or arbitration arising out of this Agreement in which the Seller asserts that this transaction is anything other than a sale of future receipts.

f.  Taxes; Workers Compensation Insurance. The Seller has paid and will continue to promptly pay, when due, all taxes, including, without limitation, income, employment, sales and use taxes imposed upon the Seller's business by law. The Seller further asserts they will maintain workers compensation insurance required by applicable governmental authorities.

g.  No Diversion of Future Receipts. The Seller shall not allow any event to occur that would cause a diversion of any portion of the Seller's Future Receipts from the Approved Bank Account or Approved Processor without the Purchaser's written permission.

h.  Change of Name of Location. The Seller, any successor-in-interest of the Seller and the Guarantor shall not conduct Seller's business under any name other than those disclosed to the Approved Processor and the Purchaser. The Seller shall not change or transfer ownership or change its place of business without obtaining prior written consent of the Purchaser.

i.  Prohibited Business Transactions. The Seller shall not: transfer or sell all or substantially all of its assets without first obtaining prior written consent of the Purchaser.

j.  No Closing of the Business. The Seller will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without first: (i) obtaining the express prior written consent of the Purchaser; and (ii) upon obtaining written consent, providing the Purchaser with a copy of the executed Agreement between the Seller and the third-party. The Seller agrees that until the Purchaser shall receive the Purchased Amount in full, the Seller will not voluntarily close its business either temporarily for repairs, renovations or any other purpose; or permanently. In the event repairs or renovations are required as per legal authorities having jurisdiction over the Seller's business or such closing is necessitated by circumstances outside of the Seller's reasonable control, the Seller shall provide the Purchaser with written notice as soon as the Seller is aware.

k.  No Pending Bankruptcy. As of the Effective Date, the Seller is not insolvent, has not filed, does not contemplate filing any petition for bankruptcy protection. There has been no involuntary bankruptcy petition brought or pending against the Seller. The Seller represents hat it has not consulted with a bankruptcy attorney on the issue of filing bankruptcy or some other insolvency proceeding within six months immediately preceding the Effective Date of this Agreement.

l.  Unencumbered Future Receipts. The Seller has and will continue to have good, complete and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests other than by virtue of entering into this Agreement. Seller specifically warrants and represents that it is not currently bound by the terms of any future receivables or factoring agreement which may encumber in any way the Future Receipts.

m.  No Stacking. The Seller shall not enter into any third-party agreement which may encumber on the Future Receipts purchased by the Purchaser.

n.  Business Purpose. The Seller is entering into this Agreement solely for business purposes and not as a consumer for personal, family or household purposes.

o.  No Default Under Contracts with Third-Parties. The Seller's execution and/or performance of its obligations under this Agreement will not cause or create an event of default by the Seller under any contract in which Seller is or may be a party to.

p.  Right of Access. The Seller hereby grants the Purchaser the right to enter, without prior notice, the premises of the Seller's business for the purpose of inspecting or checking the Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and/or batch Seller's daily receipts to the Approved Processor and to ensure that the Seller has not violated any provisions of this Agreement. The Seller hereby grants the Purchaser access to the Seller's employees, records and all other items located at the Seller's place of business during the term of this Agreement. Seller hereby agrees to provide the Purchaser any and all information concerning the Seller's

Page 7 of 27          Guarantor #1 Initials: ⟦ _DJD_ ⟧          Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

business operations, banking relationships, names and contact information of the Seller's suppliers, vendors and landlord(s) and allows the Purchaser to contact said third-parties at any time.

q. <u>Phone Recordings</u>. The Parties agree that any call between the Parties and its owners, managers, employees, and agents may be recorded and/or monitored. The Seller acknowledges and agrees that the Seller may be contacted by the Purchaser or any of their authorized representatives at any time regarding the performance of the Seller's obligations pursuant to this Agreement. The Seller further acknowledges and agrees they will not claim that such communications are unsolicited or inconvenient.

r. <u>Authorized Representative</u>. The Parties agree and acknowledge the signatories to this Agreement are authorized to make managerial and financial decisions on behalf of the Seller with respect to this Agreement and have such knowledge, experience and skill in financial and business matters, thus having the capability of evaluating the merits and risks of this Agreement.

s. <u>Attorney Representation</u>. The Sellers acknowledge and agree that they had read and fully understand the content of this Agreement; had the opportunity to consult with Seller's own counsel in connection with entering into this Agreement; and had made sufficient inquiries to determine this Agreement is fair and reasonable to the Seller.

t. <u>No Additional Fees Charged</u>. The Parties agree other than the Closing Costs, if any, the Purchaser is not charging any additional fees to the Seller.

## XVIII.    PLEDGE OF SECURITY

a. <u>Pledge</u>. As security for the prompt and complete payment and performance of any and all liabilities, obligations, covenants or agreements of the Seller pursuant to this Agreement (collectively, the "Obligations"), the Seller hereby pledges, assigns and hypothecates to the Purchaser (the "Pledge") and grants to the Purchaser a continuing, perfected and first priority lien upon and security interest in all of the Seller's rights, titles and interest in all accounts, including, but not limited to: deposit accounts, accounts receivables, other receivables, chattel paper, documents, equipment, general intangibles, instruments and inventory (collectively, the "Collateral"), whether now existing or hereinafter acquired. The Purchaser reserves the right to file a UCC-1 lien at any time during the course of this Agreement.

b. <u>Termination of the Pledge</u>. Upon the payment in full of the Obligations by the Seller, the security interest in the Collateral pursuant to this Pledge shall automatically terminate without any further act of either Party and all rights to the Collateral shall revert back to the Seller. Upon Seller's request, the Purchaser will execute, acknowledge and deliver such satisfactions, releases and termination statements, in writing.

c. <u>Representations</u>. The Seller hereby represents and warrants to the Purchaser that the execution, delivery and performance by the Seller of this Pledge, and the remedies in respect to the Collateral under this Pledge:

   i.   Are duly authorized;
   ii.  Do not require the approval of any governmental authority or any other third-party;
   iii. Do not and shall not violate or result in the breach of any provision of law or regulation, any order or decree of any court or other governmental authority; or
   iv.  Do not violate, result in the breach of or constitute a default under, or conflict with any indenture, mortgage, deed of trust, agreement or any other instrument to which the Seller is a party or by which any of the Seller's assets are bound.

d. <u>Further Assurances</u>. Upon the request of the Purchaser, the Seller, at its sole cost and expense, shall execute and deliver all such further UCC-1s, continuation statements, assurances and assignments of the Collateral and any other documents the Purchaser may request in order to more fully effectuate the purposes of this Pledge and the assignment of the Collateral to obtain the full benefits of this Pledge and the rights and powers herein created.

## XIX.    DEFAULTS AND REMEDIES.

a. <u>Events of Default</u>. The Seller is deemed to have constituted an "Event of Default" if:

   i.  The Seller shall violate any term, condition or covenant in this Agreement governing the Seller's obligations of timely delivery of the Initial Daily Installments or Adjusted Daily Installments to the Purchaser;
   ii. The Seller shall violate any term, condition, or covenant in this Agreement in regard to any other sums due for any reason whatsoever other than as the result of the Seller's business ceasing its operations exclusively

Guarantor #1 Initials: DJD    Guarantor #2 Initials:

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

due to any of the Valid Excuses;

    iii.  Seller knowingly or willfully provides incorrect, false or misleading information to the Purchaser at any time;

    iv.  The Seller shall violation any term, condition or covenant in this Agreement;

    v.  The Seller uses multiple depository accounts without obtaining prior written consent of the Purchaser;

    vi.  The Seller fails to deposit any portion of its Future Receipts into the Approved Bank Account;

    vii.  The Seller changes the Approved Bank Account or Approved Processor without obtaining prior written consent of the Purchaser;

    viii.  The Seller interferes with the Purchaser's collection of the Initial Daily Payments or Adjusted Daily Payments, including, but not limited to the Seller interfering with ACH Payments;

    ix.  Two (2) or more ACH transactions attempted by the Purchaser are rejected by the Seller's Bank;

    x.  The Seller takes on additional financing (known as "Stacking") at any times after the Effective Date and prior to the final payment pursuant to this Agreement; or

    xi.  The Guaranty shall for any reason cease to be in full force and effect.

b.  **Seller's Obligations Upon Default.** Upon occurrence of an Event of Default due to the Seller's breach of its obligations under this Agreement, the Seller shall immediately deliver to the Purchaser the entire unpaid portion of the Purchased Amount. The Seller shall also pay to the Purchaser any reasonable expenses incurred by the Purchaser in connection with recovering the monies due to the Purchaser pursuant to this Agreement, including, without limitation, the cost of retaining collection firms and reasonable attorneys' fees and disbursements (collectively, "Reasonable Damages"). The entire sum due shall bear simple interest from the Default Date until it is paid in full, at a rate of Nine Percent (9%) per annum, with interest accruing daily.

c.  **Remedies.** Upon the Seller's default, the Purchaser may immediately proceed to protect and enforce its rights under this Agreement by:

    i.  Enforcing its rights as a creditor, including, but not limited to, notifying any account debtor(s) of the Seller's of the Purchaser's security interest;

    ii.  Enforcing the provisions of the Personal Guarantee of Performance against the Guarantor(s) without first seeking recourse from the Seller for the full balance owed at the time of default, plus applicable fees and costs;

    iii.  Notifying the Seller's credit card processor of this Agreement and to direct such credit card processor to make payments directly to the Purchaser of any and all amounts received by said credit card processor on behalf of the Seller;

    iv.  Commencing a law suit, whether for specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of the Seller's obligations hereunder, or any other legal or equitable right or remedy;

    v.  In case any Event of Default occurs and it is not waived, the Purchaser will be entitled to the issuance of an Injunction, restraining order, or any other equitable relief in Purchaser's favor, subject to court approval, restraining the Seller's accounts and/or receivables up to the amount due to the Purchaser as a result of the Event of Default and the Seller will be deemed to have consented to the granting of an application for the same to any court of competent jurisdiction without any prior notice to the Sellers and without the Purchaser being required to furnish a bond or other undertaking in connection with the application;

    vi.  In case the Guarantor's obligations become due hereunder and are not waived, the Purchaser will be entitled to the issuance of an injunction, restraining order, or other equitable relief in the Purchaser's favor, subject to court approval, restraining the Seller and Guarantor's accounts and/or receivables up to the amount due to the Purchaser as a result of the Event of Default, and the Seller and Guarantor, each, in their individual capacities, will be deemed to have consented to the granting of an application for the same to any court of competent jurisdiction, without any prior notice to the Seller or Guarantor and without the Purchaser being required to furnish a bond or other undertaking in connection with the application.

d.  **Power-of-Attorney.** The Seller irrevocably appoints the Purchaser and its representatives as its agents and attorneys-in-fact with the full authority to take any action or execute any instrument or document: (i) to settle all obligations due to the Purchaser from any credit card processor and/or account debtor(s) of the Seller; (ii) upon occurrence of an Event of Default, to perform any and all obligations of the Seller under this Agreement to protect the value of the Collateral by obtaining the required insurance; (iii) to collect monies due or to become due under or in respect of any of the Collateral; (iv) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with this Agreement; (v) to sign the Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors (collectively, "Account Debtors") to make payment directly to the Purchaser; and (vi) to file any claims or take any action or institute any proceeding which the Purchaser may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise enforce its rights with respect to the collection of the Purchased Amount.

    Guarantor #1 Initials: [DJD]    Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

XX.    **MISCELLANEOUS**

a.   Seller Deposit Agreement. The Seller shall execute an agreement with the Purchaser that shall authorize the Purchaser to arrange for electric fund transfers and/or ACH Payments of the Initial Daily Installments or Adjusted Daily Installments from the Approved Bank Account. The Seller shall provide the Purchaser and/or its authorized agent with all the information, authorizations and passwords necessary to verify the Seller's receivables, receipts and deposits in the Approved Bank Account. The Seller shall authorize the Purchaser and/or its agent to deduct the payments daily to Purchaser. The authorization shall be irrevocable until such time when the Seller shall has satisfied its obligations under this Agreement.

b.   Indemnification. The Seller and its Guarantor(s) jointly and severally indemnify and hold harmless to the fullest extent permitted by law the Approved Processor, any ACH processor, customer and/or Account Debtors of the Seller, their officers, directors and shareholders against any and all losses, damages, claims, liabilities and expenses incurred by the ACH processor, customer, and/or Account Debtors of the Seller resulting from claims asserted by the Purchaser for monies owed to the Purchaser from the Seller and actions taken by any ACH Processor, customer and/or Account Debtor of the Seller in reliance upon the information or instructions provided by the Purchaser.

c.   No Liability. In no event shall the Purchaser be liable for any claims asserted by the Seller or its Guarantor under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is hereby knowingly and voluntarily waived by the Seller and Guarantor.

d.   Modifications: Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both Parties.

e.   Assignments. The Purchaser may assign, transfer or sell its rights or delegate its duties hereunder, either in whole or in part, without prior notice to the Seller. The Seller may not assign its rights or obligations under this Agreement without obtaining Purchaser's prior written consent. The Purchaser reserves the right to deny such consent.

f.   Notices. Unless different means of delivering notices are set forth, all notices, requests, consent, demands and other communications hereunder shall be delivered via certified mail, return receipt requested, to the respective Parties at the addresses listed in the preamble of this Agreement.

g.   Waiver Remedies. The Parties agree and acknowledge the Purchaser reserves any rights pursuant to this Agreement.

h.   Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

i.   Governing Law, Venue and Jurisdiction. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Purchaser which consent may be withheld in Purchaser's sole discretion. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State Connecticut. Any suit, action or proceeding arising hereunder, or the interpretation, performance, or breach hereof, shall be, if Purchaser so elects, instituted in a state court sitting in the State of Connecticut, County of Fairfield without regard to conflict of law provisions (the "Acceptable Forum"). The parties agree that the Acceptable Forum shall be the sole and exclusive forum for any and all disputes arising out of or relating to this Agreement and the Parties agree that the Acceptable Forum is convenient and submit to the jurisdiction of the Acceptable Forum and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

j.   **Service of Process.**

IMPORTANT NOTICE - THIS SERVICE OF PROCESS PROVISION CONTAINS IMPORTANT CONSENTS AND WAIVERS. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.

a.   In addition to service of process under the laws of the Acceptable Forum, each Seller and Guarantor agree and consent to receive any court required service of process (including, without limitation, service of process (a) to commence litigation, (b) after litigation has been commenced for any court filings, and (c) for Purchaser obtaining a Prejudgment Remedy), through the following methods and manners (collectively "Acceptable Methods"):

Page 10 of 27                    Guarantor #1 Initials: [VJV]                    Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

1. Mail when sent by certified or registered mail, return receipt requested, Federal Express, or other overnight courier, addressed to the respective mailing addresses of each Seller and Guarantor, as contained in this Agreement, or in Purchaser's records, or any other mailing address provided to Purchaser in writing; and

2. Electronic mail (e-mail) when sent to the respective e-mail addresses of each Seller and Guarantor, as contained in this Agreement, or in Purchaser's records, or any other e-mail address provided to Purchaser in writing.

b. Each Seller and Guarantor make, agree and consent to the following representations and waivers:

1. Each Seller and Guarantor agrees that service of process made through either or both of the Acceptable Methods will constitute valid and lawful service of process on them without the necessity for service of process by other means (e.g., as provided for by statute or rules of court), but without invalidating service of process performed in accordance with such other provisions;

2. Each Seller and Guarantor agrees and consents that service of process is deemed effective according to the following:

    i. If sent by certified or registered, mail return receipt requested, Federal Express, or other overnight courier, at the earlier of: (a) four calendar days after mailing, (b) when delivered, or (c) when actually received; and

    ii. If sent by e-mail, on the same day and time that the e-mail is sent;

3. Each Seller and Guarantor represents that their respective mailing and e-mail addresses as contained in this Agreement, and/or as provided to Purchaser in writing, are correct and valid, they regularly receive and send correspondence from these addresses, and service sent to these addresses is expected to be received by them;

4. Each Seller and Guarantor agrees and consents that Purchaser may serve process on them directly, including for the Acceptable Methods, without the necessity of having service completed by a marshal or indifferent person, but without invalidating service of process completed by a marshal or indifferent person, and each Seller and Guarantor waives any objection if Purchaser serves process directly on them; and

5. EACH SELLER AND GUARANTOR WAIVES ANY OBJECTION TO INSUFFICIENCY OF PROCESS, INSUFFICIENCY OF SERVICE OF PROCESS, OR PERSONAL JURISDICTION, WHETHER RAISED IN A MOTION TO DISMISS, OR OTHER SIMILAR MOTION, IF SERVICE IS CONDUCTED BY ANY METHOD OR MANNER CONTAINED IN THIS SERVICE OF PROCESS PROVISION OR ANY OTHER METHOD ALLOWED UNDER THE LAWS OF THE ACCEPTABLE FORUM.

k. **PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT IS $250,000 OR LESS.**

**IMPORTANT NOTICE - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.**

a. **EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:**

    1. THIS AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

    2. WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY <u>AFTER, BUT NOT UPON,</u> COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

    3. WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) IS $250,000 OR LESS, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 APPLY TO THIS AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY ONLY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER, AFTER, BUT NOT UPON, COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

c. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT

    Guarantor #1 Initials: _DJD_    Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

d.  EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH XX(j), INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY.

l. PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT EXCEEDS $250,000.

IMPORTANT NOTICE - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.

a.  EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

1.  THIS AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND
2.  WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY UPON OR AFTER COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND
3.  WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b.  EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

c.  EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) EXCEEDS $250,000, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 DO NOT APPLY TO THIS AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER UPON OR AFTER COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

d.  EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH XX(j), INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY.

m.  Survival of Representation. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement an shall continue in full force until all the obligations under this Agreement have been satisfied in full and this Agreement shall have expired.

n.  Severability. In case any of the provisions of this Agreement are found to be invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of any other provisions contained herein shall not in any way be affected or impaired. Any provision of this Agreement that may be found by a court having jurisdiction to be prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining

Guarantor #1 Initials: [DJD]          Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

provisions hereof.

o.  **Entire Agreement.** This Agreement embodies the entire agreement between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof. Each Party hereto has had the opportunity to consult with legal counsel of their choosing regarding the terms and condition of this Agreement, before executing this Agreement.

p.  **Jury Trial Waiver.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. EACH PARTY HERETO ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION AND DISCUSSIONS OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.

q.  **Class Action Waiver.** EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR IS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTIONS; AND (II) THE PARTY WHO INITATETS OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY THROUGH THE CLASS OR REPRESENTATION ACTION.

r.  **Counterparts and Facsimile Signatures.** This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one and the same agreement.

s.  **Attorney Review.** The Parties acknowledge that they are commercial entities and/or sophisticated parties and have had the opportunity to consult with their respective legal counsel regarding this Agreement. Parties further acknowledge the terms of this Agreement are not to be construed against any Party because that Party drafted the Agreement or construed in favor of any Party because that Party failed to understand the legal effect of the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the Effective Date.

**FOR THE SELLER**

By: _DAVID JR DESVERNEY_
— Signed by: —

Name: DAVID JR DESVERNEY

Title: Owner

EIN #: ▇▇▇▇▇▇▇

**FOR THE SELLER**

By: _____

Name: _____

Title: _____

EIN #: ▇▇▇▇▇▇▇

AGREE TO BE BOUND BY THE PROVIONS OF THIS AGREEMENT APPLICABLE TO AND CONCERNING

**OWNER/GUARANTOR #1**

By: _DAVID JR DESVERNEY_

Name: DAVID JR DESVERNEY

SSN: ▇▇▇▇▇▇

**OWNER/GUARANTOR #2**

By: _____

Name: _____

SSN: _____

**Monetafi**

By: _____

Name:
Title:

Initial: _DJD_

Guarantor #1 Initials: _____          Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

## EXHIBIT A – APPLICABLE FEES

The Parties hereby acknowledge and agree to the following:

1. **Possible Conflicts**. If there is any conflict or inconsistency between any of the provisions of this Addendum and any provisions of the Agreement to which this Appendix is attached, all such conflicts and inconsistencies shall follow the terms and conditions set forth in this Appendix.

2. **Additional Fees**. The Purchaser does not permit unauthorized outside fees not previously disclosed. The fee amount for this agreement is contingent upon closing papers and will be held back from the funded amount.

3. **Authorization**. The Seller hereby authorizes the Purchaser to apply a portion of the Purchase Price due to the Seller to satisfy the applicable fees as per this Agreement.

4. **No Reduction of Purchase Price**. The Parties hereby agree that the deduction of the applicable fees from the Purchase Price shall not be deemed a reduction to the Purchase Price.

5. **Applicable Fees**.

   a. **Origination/Underwriting Fee**. A total of $140,035.00 is deemed an Origination and Underwriting fee. This fee is to cover the expenses associated with origination, underwriting and related expenses pursuant to this Agreement. If for any reason the Purchaser, in their sole capacity, decides to cancel the deal, the Parties agree the Seller is still responsible for this fee.

   b. **Bank Change Fee**. In the event the Seller requests a change in bank accounts for the ACH payments, a $50.00 bank change fee shall be added.

   c. **Wire Fee**. In the event a Seller shall request a Fed Wire, a $50.00 wire fee shall be added.

   d. **ACH Program Fee**. $299.00 per month for the duration of the Agreement.

   e. **UCC Fee**. $195.00

   f. **Collection Fees and Costs**. In the event the Seller or Guarantor breaches the terms of this Agreement, the Seller and/or Guarantor shall be liable for Purchaser's reasonable attorney's fees and costs of collection and/or to enforce any term in the Agreement, in addition to any other damages awarded by a court.

**AGREED AND ACCEPTED:**

**OWNER/GUARANTOR #1**

By: DAVID JR DESVERNEY

Name: DAVID JR DESVERNEY

SSN: ██████████

**OWNER/GUARANTOR #2**

By: _____

Name: _____

SSN: _____

Monetafi
By:_____
Name:
Title:

Page 14 of 27    Guarantor #1 Initials: DJD    Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

# EXHIBIT B – PERSONAL GUARANTY OF PERFORMANCE

This Personal Guaranty of Performance (the "Guaranty") is entered into on <u>09/20/2024</u>, by and between <u>DAVID JR DESVERNEY</u> (the "Guarantor") on behalf of <u>SOLOGISTICS LLC</u> (the "Seller") and MONETAFI, (the "Purchaser") (collectively, the "Parties").

WHEREAS, pursuant to the Agreement, the Purchaser has agreed to purchase a portion of Future Receipts of the Seller;

WHEREAS, the Guarantor is an owner, officer, director, or manager of the Seller, will directly benefit from entering into the Agreement;

WHEREAS, the Purchaser is not willing to enter into the Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees to the Purchaser prompt and complete performance of all obligations of the Seller under the Agreement;

NOW, THEREFORE, pursuant to the Parties desire to proceed with the Agreement and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

1. **Guaranty of Obligations.** The Guarantor hereby irrevocably, absolutely and unconditionally guarantees to the Purchaser prompt, full, faithful and complete performance and observance of all of Seller's Obligations under the Agreement. The Guarantor unconditionally covenants to the Purchaser in the event of a default or breach at any time by the Seller, the Guarantor shall be responsible for the Obligations and pay all damages and other amounts stipulated in the Agreement with respect to non- performance of the Obligations.

2. **Guarantor's Covenants.** The liability of the Guarantor shall not be impaired, abated, deferred, diminished, modified, released, terminated or discharged, in whole or in part, or otherwise affected, by any event, condition, occurrence, circumstance, proceeding, action or failure to act, with or without notice to, or the knowledge or consent of the Guarantor, including, without limitation:

   a. any amendment, modification or extension of the Agreement or any Obligation;

   b. any extension of time for performance, whether in whole or in part, of any Obligation given prior to or after default thereunder;

   c. any exchange, surrender or release, in whole or in part, of any security that may be held by the Purchaser at any time under the Agreement;

   d. any other guaranty in existence now or which may be executed by the Guarantor or any other third-party affiliated to the Seller;

   e. any waiver of or assertion or enforcement or failure or refusal to assert or enforce, in whole or in part, any Obligation, claim, cause of action, right or remedy which the Purchaser may, at any time, have under the Agreement or with respect to any guaranty or any security which may be held by the Purchaser at any time for or under this Guaranty or with respect to the Seller;

   f. any act, omission or delay by the Purchaser which may in any manner or to any extent vary the risk of the Guarantor or which would otherwise operate as a discharge the Guarantor as a matter of law;

   g. the release of any other guarantor from liability for the performance or observance of any Obligation, whether by operation of law or otherwise;

   h. the failure to give the Guarantor any notice whatsoever; or

   i. any right, power or privilege that the Purchaser may now or hereafter have against any person, entity or collateral in relation to the Agreement.

3. **Guarantor's Additional Covenants.** The Guarantor will not dispose, convey, sell or otherwise transfer, or call the Seller to dispose, convey, sell or otherwise transfer, any material business assets of the Seller outside of the ordinary course of the Seller's business without the prior written consent of the Purchaser, which may be withheld by the Purchaser for any reason, until receipt of the entire Purchased Amount has been remitted to the Purchaser. The Guarantor shall pay to the Purchaser, upon demand, all expenses (including, without limitation, reasonable attorneys' fees and disbursements) of, or incidental to, or relating to the enforcement or protection of the Purchaser's rights hereunder or the Purchaser's rights under the Agreement. This Guaranty is binding upon the Guarantor and the Guarantor's heirs, legal representatives, successors and assigns and shall inure to the benefit of and may be enforced by the successors and assigns of the Purchaser. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of the Guarantor shall be unconditional and absolute, regardless

Page 15 of 27            Guarantor #1 Initials: _____            Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

of the unenforceability of any provision of any agreement between the Seller and the Purchaser, or the existence of any defense, setoff or counterclaim, which the Seller may assert. The Purchaser is hereby authorized, without notice or demand and without affecting the liability of the Guarantor hereunder, to at any time renew or extend the Seller's obligations under the Agreement or otherwise modify, amend or change the terms of the Agreement. Additionally, the Guarantor is hereby notified and consents that a negative credit report reflecting their credit record may be submitted to a credit-reporting agency if the Guarantor does not honor the terms of this Guaranty.

4.  **Waiver; Remedies.** No failure on the part of the Purchaser to exercise, and no delay in exercising any right under this Guaranty shall constitute a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise any other rights. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event the Seller fails to perform any obligation under the Agreement, the Purchaser may enforce its rights under this Guaranty without first seeking to obtain performance for such default from the Seller or any other Guarantors.

5.  **Acknowledge of Purchase.** The Guarantor acknowledges and agrees that the Purchase Price paid by the Purchaser to the Seller in exchange for the Purchased Amount of Future Receipts is a payment for an adequate consideration and is not intended to be treated as a loan or financial accommodation from the Purchaser to the Seller. The Guarantor specifically acknowledges that the Purchaser is not a lender, bank or credit card processor, and the Purchaser has not offered any loans to the Seller. The Guarantor waives any claims or defenses of usury in any action arising out of this Guaranty. The Guarantor acknowledges that the Purchase Price paid to the Seller is good and valuable consideration for the sale of the Purchased Amount.

6.  **Governing Law, Venue and Jurisdiction.** This Guaranty shall be governed by and construed exclusively in accordance with the laws of the State of Connecticut, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Guaranty shall be instituted exclusively in any court sitting in the State of Connecticut, County of Fairfield, (the "Acceptable Forum"). The parties agree that the Acceptable Forum is convenient and submit to the jurisdiction of the Acceptable Forum and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Guaranty irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forum.

7.  **Service of Process.**

**IMPORTANT NOTICE** - THIS SERVICE OF PROCESS PROVISION CONTAINS IMPORTANT CONSENTS AND WAIVERS. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS GUARANTY WITH YOUR LAWYER.

In addition to service of process under the laws of the Acceptable Forum, each Seller and Guarantor agree and consent to receive any court required service of process (including, without limitation, service of process (a) to commence litigation, (b) after litigation has been commenced for any court filings, and (c) for Purchaser obtaining a Prejudgment Remedy), through the following methods and manners (collectively "Acceptable Methods"):

1.  Mail when sent by certified or registered mail, return receipt requested, Federal Express, or other overnight courier, addressed to the respective mailing addresses of each Seller and Guarantor, as contained in the Agreement, or in Purchaser's records, or any other mailing address provided to Purchaser in writing; and

2.  Electronic mail (e-mail) when sent to the respective e-mail addresses of each Seller and Guarantor, as contained in the Agreement, or in Purchaser's records, or any other e-mail address provided to Purchaser in writing.

b.  Each Seller and Guarantor make, agree and consent to the following representations and waivers:

1.  Each Seller and Guarantor agrees that service of process made through either or both of the Acceptable Methods will constitute valid and lawful service of process on them without the necessity for service of process by other means (e.g., as provided for by statute or rules of court), but without invalidating service of process performed in accordance with such other provisions;

Guarantor #1 Initials: _Initial_ ⌐DJD          Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

2.       Each Seller and Guarantor agrees and consents that service of process is deemed effective according to the following:

i.       If sent by certified or registered, mail return receipt requested, Federal Express, or other overnight courier, at the earlier of: (a) four calendar days after mailing, (b) when delivered, or (c) when actually received; and

ii.       If sent by e-mail, on the same day and time that the e-mail is sent;

3.       Each Seller and Guarantor represents that their respective mailing and e-mail addresses as contained in the Agreement, and/or as provided to Purchaser in writing, are correct and valid, they regularly receive and send correspondence from these addresses, and service sent to these addresses is expected to be received by them;

4.       Each Seller and Guarantor agrees and consents that Purchaser may serve process on them directly, including for the Acceptable Methods, without the necessity of having service completed by a marshal or indifferent person, but without invalidating service of process completed by a marshal or indifferent person, and each Seller and Guarantor waives any objection if Purchaser serves process directly on them; and

5. EACH SELLER AND GUARANTOR WAIVES ANY OBJECTION TO INSUFFICIENCY OF PROCESS, INSUFFICIENCY OF SERVICE OF PROCESS, OR PERSONAL JURISDICTION, WHETHER RAISED IN A MOTION TO DISMISS, OR OTHER SIMILAR MOTION, IF SERVICE IS CONDUCTED BY ANY METHOD OR MANNER CONTAINED IN THIS SERVICE OF PROCESS PROVISION OR ANY OTHER METHOD ALLOWED UNDER THE LAWS OF THE ACCEPTABLE FORUM.

8. PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT IS $250,000 OR LESS.

IMPORTANT NOTICE - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS GUARANTY WITH YOUR LAWYER.

a.       EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

1.       THE AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

2.       WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY AFTER, BUT NOT UPON, COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

3.       WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b.       EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) IS $250,000 OR LESS, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 APPLY TO THE AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY ONLY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER, AFTER, BUT NOT UPON, COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

c.       EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION

Guarantor #1 Initials: [Initial DJD]      Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

(INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

d.      EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH 7, INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY.

9. PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT EXCEEDS $250,000.

IMPORTANT NOTICE - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS GUARANTY WITH YOUR LAWYER.

a.      EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

1.      THE AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

2.      WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY UPON OR AFTER COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

3.      WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b.      EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

c.      EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) EXCEEDS $250,000, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 DO NOT APPLY TO THE AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER UPON OR AFTER COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

d. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH 7, INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY.

10. Jury Waiver. The Parties waive the right to a trial by jury in any court in any suit, action or proceeding on any matter arising in connection with or in any way related to the transactions of which this Guaranty is a part of or its

Initial

Page 18 of 27          Guarantor #1 Initials:  | DJD |          Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

enforcement, except where such waiver is prohibited by law or deemed by a court of law to be against public policy. The Parties acknowledge that each Party makes this waiver knowingly, willingly and voluntarily and without duress, and only after extensive consideration of the ramifications of this waiver with their attorneys.

11. **Class Action Waiver**. The Parties waive any right to assert any claims against the other Party as a representative or member in any class or representative action, except where such waiver is prohibited by law or deemed by a court of law to be against public policy to the extent either Party is permitted by law or court of law to proceed with a class or representative action against the other. The Parties further acknowledge and agree that in the event a class action does occur: (i) the prevailing party shall not be entitled to recover attorneys' fees or costs associated with pursuing the class or representative action (not withstanding any other provision in this Guaranty); and (ii) the Party who initiates or participates as a member of the class will not submit a claim or otherwise participate in any recovery secured through the class or representative action.

12. **Severability**. In case any of the provisions of this Guaranty are found to be invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of any other provisions contained herein shall not in any way be affected or impaired. Any provision of this Guaranty that may be found by a court having competent jurisdiction to be prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

13. **Opportunity for Attorney Review**. The Guarantor represents that they have carefully read this Guaranty and have had a reasonable opportunity to consult with their attorney. Guarantor understand the contents of this Guaranty and agrees to the terms and conditions of this Guaranty willfully and on their own accord.

14. **Counterparts and Facsimile Signatures.** This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one and the same agreement.

**AGREED AND ACCEPTED:**

**OWNER/GUARANTOR #1**

By: _DAVID JR DESVERNEY_ (Signed by)

Name: DAVID JR DESVERNEY

SSN: ██████████

**Monetafi**

By:_____

Name:

Title:

**OWNER/GUARANTOR #2**

By: _____

Name: _____

SSN: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

## EXHIBIT C – ACH AUTHORIZATION

This ACH Authorization (the "ACH") is entered into on 09/20/2024, by and between MONETAFI ("MONETAFI"), SOLOGISTICS LLC (the "Merchant") and DAVID JR DESVERNEY (the "Guarantor") (collectively, the "Parties").

1. **Bank Account Access.**    Prior to entering into this Agreement, as part of the underwriting process, MONETAFI will require access to the Merchant's bank accounts via online bank access. Once the Agreement is executed, MONETAFI requires daily viewing access to the Merchant's bank account(s) to confirm the appropriate processing of the Scheduled Remittances. This information is strictly confidential.

2. **Bank Login Authorization.** Upon execution of the ACH, the Merchant and Guarantor(s) understand that they are authorizing MONETAFI and its agents unlimited "view only" access into any and all bank accounts, credit unions or financial institutions linked directly or indirectly to the businesses or entities listed as parties of this Agreement for the duration of the Agreement. Access is limited to viewing accounts and does not permit MONETAFI to make any changes other than saving electronic transactional history. If at any time the Merchant or Guarantor changes their account credentials, they are required to provide MONETAFI updated credentials. Refusal to provide access to accounts shall be deemed a default of this Agreement.

3. **Account Holder Information.**

    a.  Account Holder Name: SOLOGISTICS LLC

    b.  Account Holder DBA: SOLOGISTICS

    c.  Account Holder Business Address: 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557

4. **Account Holder's Bank Information.**    If there are multiple bank accounts, please provide the following information for each bank account on a separate page and annex hereto.

    **a.** Account Holder Bank Name(s):    Bank of America

    **b.** Bank Portal Website:    bofa.com

    **c.** Bank Account Number:    ▉▉▉7704

    **d.** Bank Routing Number:    ▉▉▉▉

    **e.** Bank Account Username:    ▉▉▉▉

    **f.** Bank Account Password:    ▉▉▉▉

    **g.** Security Question / Answer 1:    NA

    **h.** Security Question / Answer 2:    NA

Guarantor #1 Initials:    [Initial] DJD

Guarantor #2 Initials:

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

5. **Transaction Information**:
   a. Amount of Transaction: $62,500.00

   b. Effective Date: 09/20/2024

   c. Rate of Collection: weekly

6. **Complete ACH Authorization.**      As per the ACH, the undersigned hereby authorizes MONETAFI to electronically draft via the Automated Clearing House system the amounts indicated above from the account identified above. This authority will continue until withdraw in writing by the undersigned account holder. The undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. The Merchant acknowledges they are responsible for $35 rejection fee if items are returned for insufficient funds.

I, the undersigned, acknowledge and agree with these items, which are described in detail within the pages of this ACH.

**AUTHORIZED ACCOUNT HOLDER (MERCHANT)**

| FOR THE SELLER | | FOR THE SELLER | |
|---|---|---|---|
| By: | *DAVID JR DESVERNEY* (Signed by) | By: | |
| Name: | DAVID JR DESVERNEY | Name: | |

Guarantor #1 Initials: _DJD_          Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



**ADDENDUM**

This Addendum is entered on <u>09/20/2024</u>, by and between, Monetafi and SOLOGISTICS LLC (the "Seller") and Funderzgroup.

Should any terms of this Addendum conflict with the Revenue Purchase Agreement dated <u>09/20/2024</u> the terms of this Addendum shall govern and be controlling. Capitalized terms used herein, but not otherwise defined, shall have the same definition as in the Revenue Purchase Agreement.

Seller warrants that it understands that Monetafi must engage a third-party, namely Funderzgroup, to manage the ACH withdrawals, reporting and deal tracking. For this service, Seller agrees to pay Funderzgroup a nominal fee of <u>$299.00</u> per month. This amount is due on the first day of the Agreement and every subsequent thirty days until the Purchased Amount is paid in full to Monetafi.

Merchant 1 (Print Name):  <u>DAVID JR DESVERNEY</u>              Date:    <u>09/20/2024</u>

Title:                    <u>Owner</u>                         Signature:  *David JR Desverney*
                                                                    80A08B954E8B4F8

Merchant 2 (Print Name):                                    Date:    <u>09/20/2024</u>

Title:                                                      Signature:

Page 22 of 27

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

# THIS FORM MUST BE FILLED OUT BEFORE FUNDING.

Dear Seller,

Please fill out the form below with contact information and reference.

**Contact Information**

Guarantor Name: DAVID JR DESVERNEY

Phone Number: █████████

Email: ████████████████

**Personal Reference #1**

Name: Odion DesVerney

Phone Number: █████████

**Personal Reference #2**

Name: Jonathan DesVerney

Phone Number: █████████

**Business Reference #1**

Company Name: SOLogistics

Contact Name: Tuan Huynh

Business Phone: █████████

**Business Reference #2**

Company Name: SOLogistics

Contact Name: Robert Williams

Business Phone: █████████

**Landlord Contact**

Company Name: NA

Contact Name: Frank Li

Business Phone: █████████

**Emergency Contact**

Name: Odion DesVerney

Relationship: wife

Phone Number: █████████

Email: ████████████████

**Initials:** 
> Initial
> DJD

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



## ADDENDUM TO CONTRACT
## WAIVER OF PERSONAL SERVICE

This Addendum ("Addendum") is to be made a part of the purchase and sale of future receivables agreement (the "Contract") between Monetafi ("Purchaser") and SOLOGISTICS LLC ("Merchant") and DAVID JR DESVERNEY ("Guarantor") (collectively the "Parties") dated 09/20/2024.

1. **Merchant** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by Connecticut law. Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process.

2. **Guarantor** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by Connecticut law. Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Guarantor further agrees to waive any objection to the absence of formal service of process.

3. MERCHANT HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL")AT ops@sologistics-ops.com OR BY UNITED STATES POSTAL SERVICE AT 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557 OR BY ANY OTHER MEANS PERMITTED BY CONNECTICUT LAW.

4. GUARANTOR HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ops@sologistics-ops.com OR BY UNITED STATES POSTAL SERVICE AT 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557 OR BY ANY OTHER MEANS PERMITTED BY CONNECTICUT LAW.

5. Merchant or Guarantor shall notify Seller of any changes to its physical address or email address for service. Unless Purchaser is notified of a change in address, all addresses shall be presumed to be accurate.

6. This Addendum shall supersede any notice requirements in the Contract with respect to service of process.

| For the Personal Guarantor | For the Personal Guarantor (#2) |
|---|---|
| Signed by: | |
| DAVID JR DESVERNEY | |
| Name: DAVID JR DESVERNEY | Name: |
| Date: 09/20/2024 | Date: 09/20/2024 |
| For the Merchant | For the Merchant (#2) |
| Signed by: | |
| DAVID JR DESVERNEY | |
| Name: DAVID JR DESVERNEY | Name: |

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

Date: 09/20/2024                              Date: 09/20/2024
Title: Owner                                  Title:

Page 25 of 27

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



## Notification of Assignment

**Attention: Accounting/Accounts Payable Dept.**

This letter is to inform you that the carrier named below uses Monetafi ("MONETAFI") as its financing company.

Merchant: SOLOGISTICS LLC a CA Limited Liability Company

(Case ID - 47144)

Merchant: SOLOGISTICS INC

Date: 09/20/2024

UNDER NO CIRCUMSTANCES SHOULD PAYMENT BE PROVIDED DIRECTLY TO THE MERCHANT.

Pursuant to a Receivable Sale Agreement with MONETAFI, the above-referenced Merchant has assigned all of its current and future accounts receivable to MONETAFI, including the accounts receivable for all current and future receivables for your  company by the Merchant. Accordingly, you must remit payment for work produced directly to MONETAFI. This Assignment may only be rescinded through formal written notice if provided and signed by an authorized officer of MONETAFI.

Release of this Assignment cannot be provided by any party other than MONETAFI. Payment to the Merchant or any other party after your receipt of this notice will not discharge your legal obligation, pursuant to section 9-406 of the Uniform Commercial Code to pay MONETAFI. The Merchant will not be participating in any Quick Pay programs (even if they have previously) and all payments should be made to MONETAFI in a normal and timely matter.

All payments for work produced by this Merchant should be sent via ACH or mailed to MONETAFI at the following address:

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



**Wire Deposit:**

BENEFICIARY BANK: BANK UNITED
ROUTING & TRANSIT#: 267090594
BENEFICIARY NAME: Monetafi
BENEFICIARY ADDRESS: 750 E MAIN ST 6TH FLOOR STAMFORD CT 06902
ACCOUNT #: 9856283460

**Payments by Mail:**

Monetafi
750 E MAIN ST 6TH FLOOR STAMFORD CT 06902

**Please make appropriate changes in your accounts payable systems to reflect this change and facilitate payments as directed herein.**

**Monetafi**

By:_____

Name: _____

SOLOGISTICS LLC

Signed by:
DAVID JR DESVERNEY
————80A09B934E0B4FB————

Signature

Name:    DAVID JR DESVERNEY

Title:    Owner

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

## EXHIBIT D

DATE 09/20/2024

### LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A BLANKET SECURITY INTEREST:

SOLOGISTICS INC

850 N 119TH AVENUE AVONDALE, AZ 85392, , ,

TAX ID: ▮▮▮▮▮▮▮▮

BY:     ┌─ Signed by: ─────────────┐
        │ DAVID JR DESVERNEY       │
        └─ 80A68B964E8B4FD ────────┘

MERCHANT 1    DAVID JR DESVERNEY

BY:

MERCHANT 2

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

======================================================================

# ADDENDUM TO MERCHANT AGREEMENT

In association with the Monetafi Future Receivables and Purchase Agreement # dated 09/20/2024, I, DAVID JR DESVERNEY, and a principal of

**Legal: SOLOGISTICS LLC**

**Located at: 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557**

Do hereby attest and agree to the following terms and conditions:

**Monetafi agrees to the following discount:**
- 1.10 30 day discount
- 1.20 60 day discount
- 1.30 90 day discount

**PAYING OFF:**
- MR ADVANCE $1,122,493.31
- CROMWELL $869,062.35
- LIFETIME $368,455.72

I hereby represent this statement to be true and accurate:
**AGREED AND ACKNOWLEDGED:**

Signature: _DAVID JR DESVERNEY_ Date:09/20/2024
Guarantor
Print Name: **DAVID JR DESVERNEY**

Company Name: SOLOGISTICS LLC

Address: 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557

Office Phone: _____

Cell Phone: _____

RETURN DATE: JUNE 10, 2025          :    **SUPERIOR COURT**

**FUNDERZ GROUP, LLC DBA MONETAFI**    :    **J.D. OF NORWALK/**
              :    **STAMFORD**

**V.**           :    **AT STAMFORD**

**SOLOGISTICS, LLC, SOLOGISTICS, INC. AND**    :
**DAVID JR. DESVERNEY**           :    **MAY 8, 2025**

## APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY

TO THE SUPERIOR COURT FOR THE JUDICIAL DISTRICT OF STAMFORD/NORWALK AT STAMFORD:

The undersigned represents as follows:

1.    Pursuant to the attached signed Writ, Summons, Complaint, and Affidavit, the Plaintiff, **FUNDERZ GROUP, LLC DBA MONETAFI**, having a place of business in Stamford, Connecticut and registered in Connecticut, is about to commence an action against Defendants, SOLOGISTICS, LLC, having an address at 10420 Meadow Lark Ave., Moreno Valley, CA 92557, SOLOGISTICS, INC., having an address at 850 N 119th Avenue, Avondale, AZ 85392 and DAVID JR. DESVERNEY, having an address at 10420 Meadow Lark Ave., Moreno Valley, CA 92557, and;

2.    That there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the applicant and to secure such judgment the applicant seeks an ex-parte prejudgment remedy to secure the sum of **$3,107,544.00**.

3.    THE AGREEMENT ATTACHED HERETO IS A COMMERCIAL TRANSACTION.

4.    UNDER THE SAID AGREEMENT, THE DEFENDANT(S) CONSENT TO THE JURISIDCTION OF CONNECTICUT.

5.    UNDER SECTION XX.I. OF THE SAID COMMERCIAL AGREEMENT, DEFENDANT(S) AGREED TO PROCEDURALLY WAIVE ANY RIGHT TO A NOTICE AND HEARING UNDER CHAPTER 903A OF THE CONNECTICUT GENERAL STATUTES OR OTHER STATUTES OR STATUTES AFFECTING PREJUDGMENT REMEDIES AND AUTHORIZES PLAINTIFF'S ATTORNEY TO ISSUE A WRIT FOR A PREJUDGMENT REMEDY WITHOUT COURT ORDER AND WITHOUT THE NECESSITY OF POSTING A BOND OR OTHER SECURITY, PROVIDED THE COMPLAINT SHALL SET FORTH A COPY OF THIS WAIVER. THEREFORE, THIS APPLICATION IS REQUESTED EX-PARTE PURSUANT TO C.G.S. §52-278E(A) AND C.G.S. §52-278F AND UPON PLAINTIFF'S AFFIDAVIT IN SUPPORT OF AN EX-PARTE PREJUDGMENT REMEDY.

6.    UNDER THE SAID COMMERCIAL AGREEMENT, AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, THE DEFENDANT(S) ALSO ACKNOWLEDGED, AGREED AND CONSENTED THAT PLAINTIFF MAY ATTACH OR GARNISH ANY AND ALL OF THEIR MONEY/ACCOUNTS/FUNDS HELD IN ANY

BANK ACCOUNT AT A BANKING INSTITUTION IF THAT BANKING INSTITUTION HAS A BRANCH/OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS REGISTERED TO CONDUCT BUSINESS IN CONNECTICUT.

THE PLAINTIFF,
FUNDERZ GROUP, LLC DBA MONETAFI

By:

James E. Trudell, Esq.
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333
Facsimile No.: (860) 651-1888
Juris No. 407894

A TRUE COPY
ATTEST:

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

Hassett & George, P.C., 945 Hopmeadow Street, Simsbury, CT 06070    3
(860) 651-1333 Fax (860) 651-1888 Juris No. 407894

RETURN DATE: JUNE 10, 2025        :    SUPERIOR COURT

FUNDERZ GROUP, LLC DBA MONETAFI    :    J.D. OF NORWALK/
                                        :    STAMFORD

V.                                           :    AT STAMFORD

SOLOGISTICS, LLC, SOLOGISTICS, INC. AND  :
DAVID JR. DESVERNEY                :    MAY 8, 2025

## COMPLAINT

**COUNT ONE:**     Breach of contract (As against **NORTHEAST OHIO NEIGHBORHOOD HEALTH SERVICES INC.**)

1.     Plaintiff, FUNDERZ GROUP, LLC DBA MONETAFI ("MONETAFI") has a place of business at 780 E. Main Street, 6th Fl, Stamford, CT and registered to conduct business in Connecticut.

2.     Defendant, SOLOGISTICS, LLC, has an address at 10420 Meadow Lark Ave., Moreno Valley, CA 92557 and defendant, SOLOGISTICS, INC. has an address at 850 N 119th Avenue, Avondale, AZ 85392. The two defendants are referred to together as "SOLOGISTICS."

3.     Defendant, DAVID JR. DESVERNEY ("DESVERNEY") has an address at 10420 Meadow Lark Ave., Moreno Valley, CA 92557.

4.     DESVERNEY owns and controls SOLOGISTICS.

5.     On or about September 20, 2024, MONETAFI, as buyer, and SOLOGISTICS as seller, executed a merchant agreement (the "Agreement"), whereby SOLOGISTICS promised to pay MONETAFI a sum certain for future receivables, as more fully described therein. A true

and accurate copy of the Agreement is attached hereto as **Exhibit A.** DESVERNEY executed the Agreement and a personal performance guaranty in connection with the Agreement (the "Guaranty").

6.      MONETAFI would not have entered the Agreement, but for the Guaranty.

7.      MONETAFI performed its obligations under the Agreement by advancing the funds to SOLOGISTICS as required by the Agreement and has performed its obligations set forth therein.

8.      The Agreement is in default as a result of SOLOGISTICS's failure to make the required payments, despite efforts to reconcile the payments by MONETAFI. DESVERNEY continues to operate SOLOGISTICS.

9.      The Agreement provides, among other things, that MONETAFI is entitled to collect its reasonable attorney's fees to enforce the Agreement.

10.      SOLOGISTICS and DESVERNEY consented to jurisdiction in Connecticut under the Agreement.

11.      Furthermore, Section XX.l. of the Agreement contains a Connecticut Commercial Waiver with regards to prejudgment remedies, which is incorporated by reference herein and provides as follows:

PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT EXCEEDS $250,000.

IMPORTANT NOTICE - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.

a.    EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

1.    THIS AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

2.    WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY UPON OR AFTER COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

3.    WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b.    EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND

OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

c. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) EXCEEDS $250,000, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 DO NOT APPLY TO THIS AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER UPON OR AFTER COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

d. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH XX(j), INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY..

12. The Agreement permit MONETAFI to recover its attorney's fees to enforce the Agreement. SOLOGISTICS and DESVERNEY consented to jurisdiction in Connecticut under the Agreement.

13. As a direct result of the breach, MONETAFI has suffered damages.

**COUNT TWO:**        **Breach of Contract (As against DAVID JR. DESVERNEY)**

1-13.    MONETAFI incorporates and re-alleges paragraphs 1-13 of Count One as Paragraphs 1-13 of Count Two.

14.    DESVERNEY has failed, neglected and/or refused to fully pay MR. A under the Guaranty of the agreement and continues to operate SOLOGISTICS.

15.    DESVERNEY'S failure to pay MONETAFI constitutes a breach of contract.

16.    As a direct result of the breach, MONETAFI has suffered damages.

WHEREFORE, the plaintiff claims the following relief:

1.    Monetary damages;

2.    Interest;

3.    Attorney's fees pursuant to the Agreement/Guaranty;

4.    Costs of suit; and

5.    Any and all other relief, legal or equitable, that the court deems just and proper.

THE PLAINTIFF,
FUNDERZ GROUP, LLC DBA MONETAFI

By:    _____
James E. Trudell, Esq.
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333
Facsimile No.: (860) 651-1888
Juris No. 407894

A TRUE COPY
ATTEST:
_____
ELIZABETH J. OSTROW...
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

Hassett & George, P.C.    945 Hopmeadow Street, Simsbury, CT 06070    9
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

RETURN DATE: JUNE 10, 2025      :     **SUPERIOR COURT**

FUNDERZ GROUP, LLC DBA MONETAFI   :     **J.D. OF NORWALK/**
          :     **STAMFORD**

          :     **AT STAMFORD**

V.           :

SOLOGISTICS, LLC, SOLOGISTICS, INC. AND   :
DAVID JR. DESVERNEY          :     **MAY 8, 2025**

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand in the above captioned action is greater than $15,000.00.

THE PLAINTIFF,
FUNDERZ GROUP, LLC DBA MONETAFI

By: _James E. Trudell_

James E. Trudell, Esq.
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333
Facsimile No.: (860) 651-1888
Juris No. 407894

A TRUE COPY
ATTEST:
ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

Hassett & George, P.C.    945 Hopmeadow Street, Simsbury, CT 06070    10
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

EXHIBIT "A"

MK-7824



**Future Receivables Sale and Purchase Agreement Requirements:**

- Please review and verify your bank account information where indicated, or if it is missing, fill in the correct information on page 17 of the agreement.
- MAKE SURE ALL THE REFERENCES ARE FILLED OUT ON THE PAGE 20
- Please return:
  - CC Processing Statement or A/R Report
  - Proof of business that has the company EIN for confirmation (IRS Doc, K-1, Tax return)
  - No notary needed just clear signed documents

**Please fill in the below:**

Merchant contact information:

Name: DAVID JR DESVERNEY

Email: ▮▮▮▮▮▮▮▮▮▮

Preferred phone number: ▮▮▮▮▮▮

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



750 E MAIN ST 6TH FLOOR STAMFORD CT 06902

## FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT

This Future Receivables Sale and Purchase Agreement (the "Agreement"), dated <u>09/20/2024</u>, by and between MONETAFI(the "Purchaser") and the seller(s) listed herein(collectively, the "Seller") (all capitalized terms shall have the meanings ascribed to them below):

**Business Legal Name:** SOLOGISTICS LLC and the entities listed on "Exhibit D"

**D/B/A:** SOLOGISTICS                                                          **EIN #:** ▇▇▇▇▇

**Form of Business Entity:** Limited Liability Company

**Physical Address:** 10420 MEADOW LARK AVE    City: MORENO VALLEY    State: CA    Zip: 92557

**Mailing Address:** 10420 MEADOW LARK AVE    City: MORENO VALLEY    State: CA    Zip: 92557

| PURCHASE PRICE: | PURCHASED AMOUNT: | SPECIFIED PERCENTAGE: | INITIAL INSTALLMENT: | TOTAL FEES: | NET AMOUNT: |
|---|---|---|---|---|---|
| $2,650,000.00 | $3,972,350.00 | 21.76% | $62,500.00/weekly | $140,035.00 | $149,953.62 |

**FOR THE SELLER #1**

By: *DAVID JR DESVERNEY*
Signed by:
80A08B954E8B4FB...

Name: DAVID JR DESVERNEY

Title: Owner

Email: ▇▇▇▇▇

Business Phone: ▇▇▇▇▇

**FOR THE SELLER #2**

By: _____

Name: _____

Title: _____

Email: _____

Business Phone: _____

*Accurate contact information is required to provide the Seller with important information regarding the Agreement.

**OWNER/GUARANTOR #1**

By: *DAVID JR DESVERNEY*
Signed by:
80A08B954E8B4FB...

Name: DAVID JR DESVERNEY

SSN: ▇▇▇▇▇

Phone: ▇▇▇▇▇

Address: 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557

**OWNER/GUARANTOR #2**

By: _____

Name: _____

SSN: _____

Phone: _____

Address: _____

Initial
DJD

Page 2 of 27          Guarantor #1 Initials: DJD          Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

WHEREAS, the purpose of this Agreement is to set forth the terms and conditions in relation to the purchase of future receivables from the Seller;

WHEREAS, the Seller is entering into this Agreement voluntarily and has had ample opportunity to review this Agreement prior to executing it;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and for other valuable consideration, the sufficiency of which is agreed to by the parties hereto, the Purchaser and the Seller (collectively, the Parties"), hereby agree as follows:

I. **BASIC TERMS AND DEFINITIONS.**

   a. **"Applicable Fees"**: all initial costs and fees that Seller agrees to pay to the Purchaser as consideration. The total sum of the Applicable Fees shall be deducted from the Purchase Price prior to Seller receiving the funds from the Purchase Price (as defined below);

   b. **"Bank Change Fee"**: In the event the Seller requests a change in bank accounts for the ACH payments, a $50.00 bank change fee shall be added;

   c. **"Wire Fee"**: In the event a Seller shall request a Fed Wire, a $50.00 wire fee shall be added;

   d. **"ACH Program Fee"**: The total amount per month Seller shall pay for the duration of the Agreement towards the ACH Program;

   e. **"UCC Filing Fee"**: The total amount Seller shall reimburse Purchaser for the UCC filing associated with this Agreement;

   f. **"Collection Fees and Costs"**: In the event the Seller or Guarantor breaches the terms of this Agreement, the Seller and/or Guarantor shall be liable for Purchaser's reasonable attorney's fees and costs of collection and/or to enforce any term in the Agreement, in addition to any other damages awarded by a court.

   g. **"Bank Holiday"**: Business Days (as defined below) in which major banks are closed for business;

   h. **"Business Day"**: Monday through Friday, with the exception of bank holidays;

   i. **"Daily Receipts"**: the amount of Future Receipts (as defined below) received by Seller on a daily basis;

   j. **"Effective Date"**: the date set forth in the preamble of this Agreement;

   k. **"Future Receipts"**: all of the Seller's receipts of monies for the sale of its goods and services after the Effective Date of this Agreement;

   l. **"Net Amount"**: the consideration transferred to Seller after the Applicable Fees, Origination Fees, and/or the Prior Balance (as defined below) are deducted;

   m. **"Obligations"**: the terms and conditions the Purchaser is bound to under this Agreement;

   n. **"Origination/Underwriting Fee"**: the agreed upon fee between the Seller and a third-party Broker, which shall be deducted from the Net Amount. This fee is to cover the expenses associated with origination, underwriting and related expenses pursuant to this Agreement. If for any reason the Purchaser, in their sole capacity, decides to cancel the deal, the Parties agree the Seller is still responsible for this fee;

   o. **"Parties"**: collectively, the Purchaser, Merchant, Personal Guarantor and Seller;

   p. **"Prior Balance"**: Outstanding balance on a previous executed Agreement between the Parties;

   q. **"Purchased Amount"**: the total amount of the Specified Percentage of the Future Receipts that the Seller shall be under obligation to deliver and permit Purchaser to debit pursuant to this Agreement;

   r. **"Purchase Price"**: the total amount that the Purchaser has agreed to pay for the Purchased Amount;

   s. **"Scheduled Remittance"**: the fixed amount that the Parties agree to be a good faith approximation of the Specified Percentage (as defined below) of the Seller's Daily Receipts. Scheduled Remittance shall begin on 09/20/2024 and be processed daily. In the event a Scheduled Remittance is due on a banking holiday, Purchaser shall schedule an additional payment on the previous business day prior to said banking holiday;

   t. **"Specified Percentage"**: 21.76% of each and every sum from sales made by the Seller of Future Receipts.

   u. **"Total Fees"**: the total of all fees deducted or withheld at disbursement

   v. **"Closing Costs"**: the total of the Applicable Fee, the Prior Balance and the Origination Fee,

II. **TERM.**    This Agreement does not have a fixed duration and shall expire upon the date when the Purchased Amount and all other sums due to the Purchaser are paid in full ("Expiration Date").

III. **SALE OF PURCHASED FUTURE RECEIPTS.**   Seller hereby irrevocably assigns, transfers and conveys onto Purchaser all of the Seller's right, title and interest in the Specified Percentage of the Future Receipts until the Purchased Amount shall have been delivered by Seller to Purchaser ("Purchased Future Receipts"). This sale of the Purchased Future Receipts is made without express or implied warranty to Purchaser of collectability of the Purchased Future Receipts by Purchaser and without recourse against Seller and/or Guarantor(s), except as specifically set forth in this Agreement. By virtue of this Agreement, Seller transfers to Purchaser full and complete ownership of the Purchased Future Receipts and Seller retains no legal or equitable interest therein.

IV. **PAYMENT OF PURCHASE PRICE.**    As good faith consideration, Purchaser agrees to pay to Seller the Purchase Price, less any Applicable Fees, Prior Balance (if applicable) and Origination Fees, upon execution of this

DJO

Page 3 of 27       Guarantor #1 Initials: _____     Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

Agreement.

**V.     USE OF PURCHASE PRICE.** Seller hereby acknowledges and understands that: (i) Purchaser's ability to collect the Purchased Amount (or any portion thereof) shall be contingent upon Seller's continued operation of its business and successful generation of the Future Receipts until the Purchased Amount is delivered to Purchaser in full; and (ii) in the event of decreased efficiency or total failure of Seller's business, Purchaser's receipt of the full or any portion of the Purchased Amount may be delayed indefinitely. Based upon the forgoing, Seller agrees to use the Purchase Price exclusively for the benefit and advancement of Seller's business operations and for no other purpose.

**VI.    INITIAL DAILY INSTALLMENTS OF PURCHASED AMOUNTS.** The Purchased Amount shall be delivered by the Seller to the Purchaser daily in the amount of the Initial Daily Installment on each Business Day commencing on the Effective Date. In the event a Scheduled Remittance is due on a Bank Holiday in which Purchaser's ACH processor does not process payments, Purchaser shall schedule an additional ACH payment on the Business Day immediately preceding said Bank Holiday.

**VII.   APPROVED BANK ACCOUNT AND CREDIT CARD PROCESSOR(S).** During the term of this Agreement, the Seller shall: (i) deposit all Future Receipts into one (and only one) bank account, which shall be preapproved by the Purchaser (the "Approved Bank Account"); (ii) use one (and only one) credit card processor, which shall be preapproved by the Purchaser (the "Approved Processor"); and (iii) deposit all credit card receipts into the Approved Bank Account. In the event the Approved Bank Account or Approved Processor shall become unavailable or shall cease to operate during the term of this Agreement, Seller shall arrange for another Approved Bank Account or Approved Processor within twenty-four (24) hours.

**VIII.  AUTHORIZATION TO DEBIT APPROVED BANK ACCOUNT.** The Seller hereby authorizes the Purchaser to initiate electronic payments or ACH debits from the Approved Bank Account in the amount of the Initial Daily Installment on each Business Day commencing on the Effective Date until the Purchaser receives the full Purchased Amount. The Parties agree that the Seller shall provide Purchaser with all access code(s) for the Approved Bank Account.

**IX.    FEES ASSOCIATED WITH DEBITING APPROVED BANK ACCOUNT.** All fees, charges and expenses incurred by either Party due to rejected electronic checks, failed ACH debit attempts, overdrafts or rejections by Seller's banking institution shall be the sole responsibility of the Seller.

**X.     RECONCILIATION.**

   a.  **Seller's Right for Reconciliation.** The Parties each acknowledge and agree that:
       i.   If at any time during the term of this Agreement Seller shall experience unforeseen decreases to their Daily Receipts, the Seller shall have the right, at its sole and absolute discretion, to request a modification to their Scheduled Remittance.
       ii.  Such modification to their Scheduled Remittance (the "Reconciliation") shall be performed by the Purchaser within five (5) Business Days following the written request by Seller for said Reconciliation.

   b.  **Reconciliation Procedure.**
       i.    Seller shall submit a written request for Reconciliation via email to Collections@monetafi.com, Michael@monetafi.com with the subject line, "REQUEST FOR RECONCILIATION";
       ii.   Said written request shall include a copy of the Seller's most recent bank statement and credit card processing statement;
       iii.  The Purchaser shall have five (5) Business Days to review the Request for Reconciliation.

   c.  **Warranties.** The Seller shall have the right to request Reconciliation as many times during the term of this Agreement as it deems proper. Nothing set forth in this Agreement shall be deemed to provide the Seller with the right to interfere with the Purchaser's right and ability to debit the Approved Bank Account while the request for Reconciliation is pending or until the Purchased Amount is collected by the Purchaser in full; or modify the amount of the Initial Daily Installment for any calendar month without prior approval of all Parties.

**XI.    SELLER'S RIGHT TO ACCELERATE REMITTANCE OF THE OUTSTANDING PORTION OF THE PURCHASED AMOUNT OF FUTURE RECEIPTS ("OUTSTANDING PAFR").**

   a.  Seller shall have the right, at any time after receipt of the Purchase Price and upon obtaining Purchaser's prior written consent to accelerate the delivery of the undelivered portion of the Purchased Amount of Future Receipts (the "Outstanding PAFR") so long as:

Page 4 of 27                    Guarantor #1 Initials: [DJD]                    Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

    i.   the Outstanding PAFR is paid in full;

    ii.   such notice shall be in writing stating the exact amount due and delivery date of payment; and

    iii.   Initial Daily Installments continue as schedule until the Outstanding PAFR is paid to the Purchaser.

    b.   Upon proper delivery of the Outstanding PAFR to Purchaser and written confirmation by Purchaser, Seller's obligations to the Purchaser shall be deemed completed and fulfilled.

### XII.   PURCHASER'S RIGHTS AND OBLIGATIONS UPON RECEIPT OF OUTSTANDING PAFR.

    a.   Purchaser shall notify the Approved Bank Account and cease Initial Daily Installments or Adjusted Daily Installments payments to Purchaser's bank account within three (3) business days.

    b.   In the event Purchaser shall receive Initial Daily Installments or Adjusted Daily Installments after the Accelerated Delivery Date, Purchaser shall immediately:

        i.   Return to Seller the total sum of the Initial Daily Installments or Adjusted Daily Installment payments received after the delivery of the Outstanding PAFR to Purchaser; or

        ii.   Apply the total sum of the Initial Daily Installments or Adjusted Daily Installments received by Purchaser after the Accelerated Delivery Date toward Seller's outstanding financial obligations to Purchaser existing as of the Accelerated Delivery Date.

    c.   Seller acknowledges and agrees that the Purchaser shall have the right to apply the total sum of the Initial Daily Installments or Adjusted Daily Installments received by the Purchaser after the Accelerated Delivery Date toward Seller's outstanding financial obligations between the Parties.

### XIII.   RISK SHARING ACKNOWLEDGMENTS AND ARRANGEMENTS. The Parties each hereby acknowledge and agree that:

    a.   The Purchased Future Receipts represent a portion of Seller's Future Receipts.

    b.   This Agreement consummates the sale of the Purchased Future Receipts at a discount, not the borrowing of funds by the Seller from Purchaser. Purchaser does not charge the Seller and will not collect from the Seller any interest on the monies used by the Purchaser for the purchase of the Purchased Future Receipts.

    c.   The period of time that it will take the Purchaser to collect the Purchased Amount is not fixed, is unknown to both Parties at this time and will depend on the success of the Seller's business.

    d.   The amount of the Initial Daily Installment is calculated based upon the information concerning an average amount of Daily Receipts collected by the Seller's business immediately prior to the Effective Date of this Agreement, as well as representations regarding the Seller's estimated Future Receipts provided by the Seller to the Purchaser.

    e.   The amount of Seller's future Daily Receipts may increase or decrease over time.

    f.   Seller may not be in breach or in default of this Agreement in the event the full Purchased Amount is not remitted because the Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business.

        i.   EXCEPTION: Seller will be deemed in breach or in default if the Seller's business goes bankrupt or ceases operations due to the Seller's willful or negligent mishandling of its business or Seller purposefully failing to comply with the obligations or this Agreement.

    g.   The Purchaser agrees to purchase the Purchased Future Receipts knowing the Seller's business may slow down or fail.

    h.   The Purchasers assumes the risk based exclusively upon the information provided to it by the Seller and is detrimentally relying on the Seller's representations. warranties and covenants contained in this Agreement.

    i.   The Purchaser hereby acknowledges and agrees that Seller may be excused from performing its obligations under this Agreement in the event Seller's business ceases its operations exclusively due to the following (collectively, the "Valid Excuses"):

        i.   Adverse business conditions that occurred for reasons outside of Seller's control and are not due to Seller's willful or negligent mishandling of its business;

        ii.   Loss of the premises where the business operates due to force majeure, provided that the Seller does not continue or resume business operations in another location;

        iii.   Seller's bankruptcy, so long as the Seller did not fraudulently, willfully or negligently refuse to disclose proper documentation to the Purchaser prior to the execution of this Agreement; or

        iv.   Force majeure.

    j.   The Purchaser reserves the right to apply monies received pursuant to this Agreement first toward any fees and then toward the Purchased Amount.

    k.   The Parties agree that the Purchase Price is paid to the Seller in consideration for the acquisition of the Purchased Future Receipts and that payment of the Purchase Price by the Purchaser is not intended to be, nor shall it be

      Guarantor #1 Initials: __DJD__       Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

construed as a loan from the Purchaser to the Seller that requires absolute and unconditional repayment on a specified maturity date. The Purchaser's ability to receive the Purchased Amount is conditional upon the performance of the Seller's business.

l.    In the event a court shall determine that the Purchaser has charged or received interest hereunder in excess of the highest rate allowed by law, the rate of such interest received by the Purchaser shall automatically be reduced to the maximum rate permitted by applicable law and the Purchaser shall promptly refund to the Seller any excess interest remitted.

XIV.    **APPLICABLE FEES.** The Parties acknowledge the Applicable Fees were agreed upon prior to the Seller entering into this Agreement, were subject to arms-length negotiations between the Parties and a detailed list of the Applicable Fees is set forth in Exhibit A of this Agreement.

XV.    **ORIGINATION FEE.** To the extent that the Seller has agreed to a Broker Fee with a third-party broker, the Seller hereby requests and agrees for the Purchaser to withhold the Broker Fee from the Purchase Price and for the Purchaser to pay the third-party broker directly as per the directive in Rider 3.

XVI.    **NO OTHER REDUCTIONS OF PURCHASE PRICE.** The Seller hereby:

a.    Agrees to pay the Applicable Fee, the Prior Balance and the Origination Fee (collectively, the "Closing Costs") in full;

b.    Authorizes the Purchaser to apply a portion of the Purchase Price due to the Seller toward satisfaction of the Seller's obligation to pay the Closing Costs by deducting them from the Purchase Price prior to delivering it to the Seller;

c.    Agrees that deduction of the Closing Costs from the Purchase Price shall not be deemed a reduction of the Purchase Price.

XVII.    **REPRESENTATIONS, WARRANTIES & COVENANTS.** The Seller represents and warrants that as of the Effective Date and during the term of this Agreement:

a.    Financial Condition and Financial Information. The Seller's bank and financial statements furnished to the Purchaser, along with any future statements which may be furnished hereafter, fairly represent the financial condition of the Seller on the date the statements are issued. Prior to the execution of this Agreement, there has been no material adverse changes, financial or otherwise, in the operation or ownership of the Seller. The Seller has a continuing, affirmative obligation to advise the Purchaser of any material adverse change in its financial condition, operation or ownership and/or banking log-in credentials. The Purchaser may request the Seller's bank statements at any time until the Purchased Future Receipts are remitted to the Purchaser and the Seller shall provide such information to the Purchaser within five (5) business days. The Seller's failure to provide such information or blocking access to the Approved Bank Account is deemed a material breach of this Agreement.

b.    Governmental Approvals. The Seller is in compliance and shall remain in compliance with all applicable laws and has the proper valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which its presently engaged.

c.    Good Standing. The Seller is a corporation/limited liability company/limited partnership/or other type of entity ("business entity") that is in good standing and duly incorporated or otherwise organized and validly existing under the laws of its jurisdiction of incorporation or organization, and has the full power and authority necessary to carry its business as it is now being conducted. In the event the business entity is dissolved for any reason, the Seller shall advise the Purchaser within five (5) business days **prior** to the dissolution for any reason. This Agreement shall remain in full effect despite the dissolution of the business entity and any subsequent business entities formed by the Seller(s) may be responsible for the Purchased Future Receipts.

d.    Authorization. The Seller represents has all requisite power to execute, delivery and perform this Agreement and consummate the transactions contemplated hereunder. The Seller also represents and warrants that entering into this Agreement will not result in the breach, violation or default under any other agreement or instrument by which the Seller is bound; nor are any statutes, rules, regulations, orders or other laws to which the Seller is subject to. The Seller further represents and warrants that entering into this Agreement does not require the obtaining of any consent, approval, permit or license from any governmental authority having jurisdiction over the Seller. All organization and other proceedings required to be taken by the Seller to authorize the execution, delivery and performance of this Agreement have already been taken. The Personal Guarantor signing this Agreement on behalf of the Sellers has full power and authority to bind the Seller to perform its obligations under this Agreement.

e.    Accounting Records and Tax Returns. The Seller will treat the receipt of the Purchase Price and payment of the

Guarantor #1 Initials: DJD    Guarantor #2 Initials: _____

Docusign Envelope ID: 797192F9-F19F-4F20-AD00-00DEA0035013

Purchased Amount in a manner evidencing sale of its future receipts in its accounting records and tax returns and further agrees that the Purchaser is entitled to audit the Seller's accounting records and tax returns upon reasonable notice in order to verify compliance. The Seller hereby waives any rights of privacy, confidentiality or taxpayer privilege in any litigation or arbitration arising out of this Agreement in which the Seller asserts that this transaction is anything other than a sale of future receipts.

f.  Taxes; Workers Compensation Insurance. The Seller has paid and will continue to promptly pay, when due, all taxes, including, without limitation, income, employment, sales and use taxes imposed upon the Seller's business by law. The Seller further asserts they will maintain workers compensation insurance required by applicable governmental authorities.

g.  No Diversion of Future Receipts. The Seller shall not allow any event to occur that would cause a diversion of any portion of the Seller's Future Receipts from the Approved Bank Account or Approved Processor without the Purchaser's written permission.

h.  Change of Name of Location. The Seller, any successor-in-interest of the Seller and the Guarantor shall not conduct Seller's business under any name other than those disclosed to the Approved Processor and the Purchaser. The Seller shall not change or transfer ownership or change its place of business without obtaining prior written consent of the Purchaser.

i.  Prohibited Business Transactions. The Seller shall not: transfer or sell all or substantially all of its assets without first obtaining prior written consent of the Purchaser.

j.  No Closing of the Business. The Seller will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without first: (i) obtaining the express prior written consent of the Purchaser; and (ii) upon obtaining written consent, providing the Purchaser with a copy of the executed Agreement between the Seller and the third-party. The Seller agrees that until the Purchaser shall receive the Purchased Amount in full, the Seller will not voluntarily close its business either temporarily for repairs, renovations or any other purpose; or permanently. In the event repairs or renovations are required as per legal authorities having jurisdiction over the Seller's business or such closing is necessitated by circumstances outside of the Seller's reasonable control, the Seller shall provide the Purchaser with written notice as soon as the Seller is aware.

k.  No Pending Bankruptcy. As of the Effective Date, the Seller is not insolvent, has not filed, does not contemplate filing any petition for bankruptcy protection. There has been no involuntary bankruptcy petition brought or pending against the Seller. The Seller represents hat it has not consulted with a bankruptcy attorney on the issue of filing bankruptcy or some other insolvency proceeding within six months immediately preceding the Effective Date of this Agreement.

l.  Unencumbered Future Receipts. The Seller has and will continue to have good, complete and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests other than by virtue of entering into this Agreement. Seller specifically warrants and represents that it is not currently bound by the terms of any future receivables or factoring agreement which may encumber in any way the Future Receipts.

m.  No Stacking. The Seller shall not enter into any third-party agreement which may encumber on the Future Receipts purchased by the Purchaser.

n.  Business Purpose. The Seller is entering into this Agreement solely for business purposes and not as a consumer for personal, family or household purposes.

o.  No Default Under Contracts with Third-Parties. The Seller's execution and/or performance of its obligations under this Agreement will not cause or create an event of default by the Seller under any contract in which Seller is or may be a party to.

p.  Right of Access. The Seller hereby grants the Purchaser the right to enter, without prior notice, the premises of the Seller's business for the purpose of inspecting or checking the Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and/or batch Seller's daily receipts to the Approved Processor and to ensure that the Seller has not violated any provisions of this Agreement. The Seller hereby grants the Purchaser access to the Seller's employees, records and all other items located at the Seller's place of business during the term of this Agreement. Seller hereby agrees to provide the Purchaser any and all information concerning the Seller's

Page 7 of 27          Guarantor #1 Initials: DJD          Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

business operations, banking relationships, names and contact information of the Seller's suppliers, vendors and landlord(s) and allows the Purchaser to contact said third-parties at any time.

q. **Phone Recordings.** The Parties agree that any call between the Parties and its owners, managers, employees, and agents may be recorded and/or monitored. The Seller acknowledges and agrees that the Seller may be contacted by the Purchaser or any of their authorized representatives at any time regarding the performance of the Seller's obligations pursuant to this Agreement. The Seller further acknowledges and agrees they will not claim that such communications are unsolicited or inconvenient.

r. **Authorized Representative.** The Parties agree and acknowledge the signatories to this Agreement are authorized to make managerial and financial decisions on behalf of the Seller with respect to this Agreement and have such knowledge, experience and skill in financial and business matters, thus having the capability of evaluating the merits and risks of this Agreement.

s. **Attorney Representation.** The Sellers acknowledge and agree that they had read and fully understand the content of this Agreement; had the opportunity to consult with Seller's own counsel in connection with entering into this Agreement; and had made sufficient inquiries to determine this Agreement is fair and reasonable to the Seller.

t. **No Additional Fees Charged.** The Parties agree other than the Closing Costs, if any, the Purchaser is not charging any additional fees to the Seller.

## XVIII. PLEDGE OF SECURITY

a. **Pledge.** As security for the prompt and complete payment and performance of any and all liabilities, obligations, covenants or agreements of the Seller pursuant to this Agreement (collectively, the "Obligations"), the Seller hereby pledges, assigns and hypothecates to the Purchaser (the "Pledge") and grants to the Purchaser a continuing, perfected and first priority lien upon and security interest in all of the Seller's rights, titles and interest in all accounts, including, but not limited to: deposit accounts, accounts receivables, other receivables, chattel paper, documents, equipment, general intangibles, instruments and inventory (collectively, the "Collateral"), whether now existing or hereinafter acquired. The Purchaser reserves the right to file a UCC-1 lien at any time during the course of this Agreement.

b. **Termination of the Pledge.** Upon the payment in full of the Obligations by the Seller, the security interest in the Collateral pursuant to this Pledge shall automatically terminate without any further act of either Party and all rights to the Collateral shall revert back to the Seller. Upon Seller's request, the Purchaser will execute, acknowledge and deliver such satisfactions, releases and termination statements, in writing.

c. **Representations.** The Seller hereby represents and warrants to the Purchaser that the execution, delivery and performance by the Seller of this Pledge, and the remedies in respect to the Collateral under this Pledge:

    i. Are duly authorized;

    ii. Do not require the approval of any governmental authority or any other third-party;

    iii. Do not and shall not violate or result in the breach of any provision of law or regulation, any order or decree of any court or other governmental authority; or

    iv. Do not violate, result in the breach of or constitute a default under, or conflict with any indenture, mortgage, deed of trust, agreement or any other instrument to which the Seller is a party or by which any of the Seller's assets are bound.

d. **Further Assurances.** Upon the request of the Purchaser, the Seller, at its sole cost and expense, shall execute and deliver all such further UCC-1s, continuation statements, assurances and assignments of the Collateral and any other documents the Purchaser may request in order to more fully effectuate the purposes of this Pledge and the assignment of the Collateral to obtain the full benefits of this Pledge and the rights and powers herein created.

## XIX. DEFAULTS AND REMEDIES.

a. **Events of Default.** The Seller is deemed to have constituted an "Event of Default" if:

    i. The Seller shall violate any term, condition or covenant in this Agreement governing the Seller's obligations of timely delivery of the Initial Daily Installments or Adjusted Daily Installments to the Purchaser;

    ii. The Seller shall violate any term, condition, or covenant in this Agreement in regard to any other sums due for any reason whatsoever other than as the result of the Seller's business ceasing its operations exclusively

Page 8 of 27       Guarantor #1 Initials: DJD      Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

due to any of the Valid Excuses;

   iii.  Seller knowingly or willfully provides incorrect, false or misleading information to the Purchaser at any time;

   iv.  The Seller shall violation any term, condition or covenant in this Agreement;

   v.  The Seller uses multiple depository accounts without obtaining prior written consent of the Purchaser;

   vi.  The Seller fails to deposit any portion of its Future Receipts into the Approved Bank Account;

   vii.  The Seller changes the Approved Bank Account or Approved Processor without obtaining prior written consent of the Purchaser;

   viii.  The Seller interferes with the Purchaser's collection of the Initial Daily Payments or Adjusted Daily Payments, including, but not limited to the Seller interfering with ACH Payments;

   ix.  Two (2) or more ACH transactions attempted by the Purchaser are rejected by the Seller's Bank;

   x.  The Seller takes on additional financing (known as "Stacking") at any times after the Effective Date and prior to the final payment pursuant to this Agreement; or

   xi.  The Guaranty shall for any reason cease to be in full force and effect.

b.  **Seller's Obligations Upon Default**. Upon occurrence of an Event of Default due to the Seller's breach of its obligations under this Agreement, the Seller shall immediately deliver to the Purchaser the entire unpaid portion of the Purchased Amount. The Seller shall also pay to the Purchaser any reasonable expenses incurred by the Purchaser in connection with recovering the monies due to the Purchaser pursuant to this Agreement, including, without limitation, the cost of retaining collection firms and reasonable attorneys' fees and disbursements (collectively, "Reasonable Damages"). The entire sum due shall bear simple interest from the Default Date until it is paid in full, at a rate of Nine Percent (9%) per annum, with interest accruing daily.

c.  **Remedies**. Upon the Seller's default, the Purchaser may immediately proceed to protect and enforce its rights under this Agreement by:

   i.  Enforcing its rights as a creditor, including, but not limited to, notifying any account debtor(s) of the Seller's of the Purchaser's security interest;

   ii.  Enforcing the provisions of the Personal Guarantee of Performance against the Guarantor(s) without first seeking recourse from the Seller for the full balance owed at the time of default, plus applicable fees and costs;

   iii.  Notifying the Seller's credit card processor of this Agreement and to direct such credit card processor to make payments directly to the Purchaser of any and all amounts received by said credit card processor on behalf of the Seller;

   iv.  Commencing a law suit, whether for specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of the Seller's obligations hereunder, or any other legal or equitable right or remedy;

   v.  In case any Event of Default occurs and it is not waived, the Purchaser will be entitled to the issuance of an injunction, restraining order, or any other equitable relief in Purchaser's favor, subject to court approval, restraining the Seller's accounts and/or receivables up to the amount due to the Purchaser as a result of the Event of Default and the Seller will be deemed to have consented to the granting of an application for the same to any court of competent jurisdiction without any prior notice to the Sellers and without the Purchaser being required to furnish a bond or other undertaking in connection with the application;

   vi.  In case the Guarantor's obligations become due hereunder and are not waived, the Purchaser will be entitled to the issuance of an injunction, restraining order, or other equitable relief in the Purchaser's favor, subject to court approval, restraining the Seller and Guarantor's accounts and/or receivables up to the amount due to the Purchaser as a result of the Event of Default, and the Seller and Guarantor, each, in their individual capacities, will be deemed to have consented to the granting of an application for the same to any court of competent jurisdiction, without any prior notice to the Seller or Guarantor and without the Purchaser being required to furnish a bond or other undertaking in connection with the application.

d.  **Power-of-Attorney**. The Seller irrevocably appoints the Purchaser and its representatives as its agents and attorneys-in-fact with the full authority to take any action or execute any instrument or document: (i) to settle all obligations due to the Purchaser from any credit card processor and/or account debtor(s) of the Seller; (ii) upon occurrence of an Event of Default, to perform any and all obligations of the Seller under this Agreement to protect the value of the Collateral by obtaining the required insurance; (iii) to collect monies due or to become due under or in respect of any of the Collateral; (iv) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with this Agreement; (v) to sign the Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors (collectively, "Account Debtors") to make payment directly to the Purchaser; and (vi) to file any claims or take any action or institute any proceeding which the Purchaser may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise enforce its rights with respect to the collection of the Purchased Amount.

Guarantor #1 Initials: _DJO_     Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

**XX.    MISCELLANEOUS**

a.    Seller Deposit Agreement. The Seller shall execute an agreement with the Purchaser that shall authorize the Purchaser to arrange for electric fund transfers and/or ACH Payments of the Initial Daily Installments or Adjusted Daily Installments from the Approved Bank Account. The Seller shall provide the Purchaser and/or its authorized agent with all the information, authorizations and passwords necessary to verify the Seller's receivables, receipts and deposits in the Approved Bank Account. The Seller shall authorize the Purchaser and/or its agent to deduct the payments daily to Purchaser. The authorization shall be irrevocable until such time when the Seller shall has satisfied its obligations under this Agreement.

b.    Indemnification. The Seller and its Guarantor(s) jointly and severally indemnify and hold harmless to the fullest extent permitted by law the Approved Processor, any ACH processor, customer and/or Account Debtors of the Seller, their officers, directors and shareholders against any and all losses, damages, claims, liabilities and expenses incurred by the ACH processor, customer, and/or Account Debtors of the Seller resulting from claims asserted by the Purchaser for monies owed to the Purchaser from the Seller and actions taken by any ACH Processor, customer and/or Account Debtor of the Seller in reliance upon the information or instructions provided by the Purchaser.

c.    No Liability. In no event shall the Purchaser be liable for any claims asserted by the Seller or its Guarantor under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is hereby knowingly and voluntarily waived by the Seller and Guarantor.

d.    Modifications; Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both Parties.

e.    Assignments. The Purchaser may assign, transfer or sell its rights or delegate its duties hereunder, either in whole or in part, without prior notice to the Seller. The Seller may not assign its rights or obligations under this Agreement without obtaining Purchaser's prior written consent. The Purchaser reserves the right to deny such consent.

f.    Notices. Unless different means of delivering notices are set forth, all notices, requests, consent, demands and other communications hereunder shall be delivered via certified mail, return receipt requested, to the respective Parties at the addresses listed in the preamble of this Agreement.

g.    Waiver Remedies. The Parties agree and acknowledge the Purchaser reserves any rights pursuant to this Agreement.

h.    Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

i.    Governing Law, Venue and Jurisdiction. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Purchaser which consent may be withheld in Purchaser's sole discretion. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State Connecticut. Any suit, action or proceeding arising hereunder, or the interpretation, performance, or breach hereof, shall be, if Purchaser so elects, instituted in a state court sitting in the State of Connecticut, County of Fairfield without regard to conflict of law provisions (the "Acceptable Forum"). The parties agree that the Acceptable Forum shall be the sole and exclusive forum for any and all disputes arising out of or relating to this Agreement and the Parties agree that the Acceptable Forum is convenient and submit to the jurisdiction of the Acceptable Forum and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

j.    **Service of Process.**

**IMPORTANT NOTICE** - THIS SERVICE OF PROCESS PROVISION CONTAINS IMPORTANT CONSENTS AND WAIVERS. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.

a.    In addition to service of process under the laws of the Acceptable Forum, each Seller and Guarantor agree and consent to receive any court required service of process (including, without limitation, service of process (a) to commence litigation, (b) after litigation has been commenced for any court filings, and (c) for Purchaser obtaining a Prejudgment Remedy), through the following methods and manners (collectively "Acceptable Methods"):

Page 10 of 27                    Guarantor #1 Initials: _____        Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

1. Mail when sent by certified or registered mail, return receipt requested, Federal Express, or other overnight courier, addressed to the respective mailing addresses of each Seller and Guarantor, as contained in this Agreement, or in Purchaser's records, or any other mailing address provided to Purchaser in writing; and

2. Electronic mail (e-mail) when sent to the respective e-mail addresses of each Seller and Guarantor, as contained in this Agreement, or in Purchaser's records, or any other e-mail address provided to Purchaser in writing.

b. Each Seller and Guarantor make, agree and consent to the following representations and waivers:

1. Each Seller and Guarantor agrees that service of process made through either or both of the Acceptable Methods will constitute valid and lawful service of process on them without the necessity for service of process by other means (e.g., as provided for by statute or rules of court), but without invalidating service of process performed in accordance with such other provisions;

2. Each Seller and Guarantor agrees and consents that service of process is deemed effective according to the following:

    i. If sent by certified or registered, mail return receipt requested, Federal Express, or other overnight courier, at the earlier of: (a) four calendar days after mailing, (b) when delivered, or (c) when actually received; and

    ii. If sent by e-mail, on the same day and time that the e-mail is sent;

3. Each Seller and Guarantor represents that their respective mailing and e-mail addresses as contained in this Agreement, and/or as provided to Purchaser in writing, are correct and valid, they regularly receive and send correspondence from these addresses, and service sent to these addresses is expected to be received by them;

4. Each Seller and Guarantor agrees and consents that Purchaser may serve process on them directly, including for the Acceptable Methods, without the necessity of having service completed by a marshal or indifferent person, but without invalidating service of process completed by a marshal or indifferent person, and each Seller and Guarantor waives any objection if Purchaser serves process directly on them; and

5. EACH SELLER AND GUARANTOR WAIVES ANY OBJECTION TO INSUFFICIENCY OF PROCESS, INSUFFICIENCY OF SERVICE OF PROCESS, OR PERSONAL JURISDICTION, WHETHER RAISED IN A MOTION TO DISMISS, OR OTHER SIMILAR MOTION, IF SERVICE IS CONDUCTED BY ANY METHOD OR MANNER CONTAINED IN THIS SERVICE OF PROCESS PROVISION OR ANY OTHER METHOD ALLOWED UNDER THE LAWS OF THE ACCEPTABLE FORUM.

k. **PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT IS $250,000 OR LESS.**

**IMPORTANT NOTICE - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.**

a. **EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:**

    1. THIS AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

    2. WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY AFTER, BUT NOT UPON, COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

    3. WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) IS $250,000 OR LESS, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 APPLY TO THIS AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY ONLY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER, AFTER, BUT NOT UPON, COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

c. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT

Guarantor #1 Initials: DJD          Guarantor #2 Initials:

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

d.   EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH XX(j), INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY.

l. PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT EXCEEDS $250,000.

IMPORTANT NOTICE - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS AGREEMENT WITH YOUR LAWYER.

a.   EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

1.   THIS AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

2.   WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY UPON OR AFTER COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

3.   WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b.   EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

c.   EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) EXCEEDS $250,000, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 DO NOT APPLY TO THIS AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER UPON OR AFTER COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

d.   EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH XX(j), INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY.

m.   Survival of Representation. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement an shall continue in full force until all the obligations under this Agreement have been satisfied in full and this Agreement shall have expired.

n.   Severability. In case any of the provisions of this Agreement are found to be invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of any other provisions contained herein shall not in any way be affected or impaired. Any provision of this Agreement that may be found by a court having jurisdiction to be prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining

Page 12 of 27          Guarantor #1 Initials: DJD          Guarantor #2 Initials:

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

provisions hereof.

o.   Entire Agreement. This Agreement embodies the entire agreement between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof. Each Party hereto has had the opportunity to consult with legal counsel of their choosing regarding the terms and condition of this Agreement, before executing this Agreement.

p.   Jury Trial Waiver. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. EACH PARTY HERETO ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION AND DISCUSSIONS OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.

q.   Class Action Waiver. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR IS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTIONS; AND (II) THE PARTY WHO INITATETS OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY THROUGH THE CLASS OR REPRESENTATION ACTION.

r.   Counterparts and Facsimile Signatures. This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one and the same agreement.

s.   Attorney Review. The Parties acknowledge that they are commercial entities and/or sophisticated parties and have had the opportunity to consult with their respective legal counsel regarding this Agreement. Parties further acknowledge the terms of this Agreement are not to be construed against any Party because that Party drafted the Agreement or construed in favor of any Party because that Party failed to understand the legal effect of the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the Effective Date

**FOR THE SELLER**

By: *DAVID JR DESVERNEY*
Signed by:

Name:  DAVID JR DESVERNEY

Title:  Owner

EIN #:  ██████████

**FOR THE SELLER**

By: _____

Name: _____

Title: _____

EIN #: ██████████

AGREE TO BE BOUND BY THE PROVIONS OF THIS AGREEMENT APPLICABLE TO AND CONCERNING

**OWNER/GUARANTOR #1**

By: *DAVID JR DESVERNEY*

Name:  DAVID JR DESVERNEY

SSN: ██████████

**OWNER/GUARANTOR #2**

By: _____

Name: _____

SSN: _____

**Monetafi**

By: _____

Name:
Title:

Guarantor #1 Initials: *DJD* Initial

Guarantor #2 Initials: _____

Case 3:25-cv-01114-KAD    Document 1-1    Filed 07/14/25    Page 98 of 123

## EXHIBIT A – APPLICABLE FEES

The Parties hereby acknowledge and agree to the following:

1. **Possible Conflicts.** If there is any conflict or inconsistency between any of the provisions of this Addendum and any provisions of the Agreement to which this Appendix is attached, all such conflicts and inconsistencies shall follow the terms and conditions set forth in this Appendix.

2. **Additional Fees.** The Purchaser does not permit unauthorized outside fees not previously disclosed. The fee amount for this agreement is contingent upon closing papers and will be held back from the funded amount.

3. **Authorization.** The Seller hereby authorizes the Purchaser to apply a portion of the Purchase Price due to the Seller to satisfy the applicable fees as per this Agreement.

4. **No Reduction of Purchase Price.** The Parties hereby agree that the deduction of the applicable fees from the Purchase Price shall not be deemed a reduction to the Purchase Price.

5. **Applicable Fees.**

    a. **Origination/Underwriting Fee.** A total of $140,035.00 is deemed an Origination and Underwriting fee. This fee is to cover the expenses associated with origination, underwriting and related expenses pursuant to this Agreement. If for any reason the Purchaser, in their sole capacity, decides to cancel the deal, the Parties agree the Seller is still responsible for this fee.

    b. **Bank Change Fee.** In the event the Seller requests a change in bank accounts for the ACH payments, a $50.00 bank change fee shall be added.

    c. **Wire Fee.** In the event a Seller shall request a Fed Wire, a $50.00 wire fee shall be added.

    d. **ACH Program Fee.** $299.00   per month for the duration of the Agreement.

    e. **UCC Fee.** $195.00

    f. **Collection Fees and Costs.** In the event the Seller or Guarantor breaches the terms of this Agreement, the Seller and/or Guarantor shall be liable for Purchaser's reasonable attorney's fees and costs of collection and/or to enforce any term in the Agreement, in addition to any other damages awarded by a court.

**AGREED AND ACCEPTED:**

**OWNER/GUARANTOR #1**

By: DAVID JR DESVERNEY

Name: DAVID JR DESVERNEY

SSN: ▮▮▮▮▮▮▮

**OWNER/GUARANTOR #2**

By: _____

Name: _____

SSN: _____

**Monetafi**

By: _____

Name:

Title:

Guarantor #1 Initials: DJD

Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

# EXHIBIT B – PERSONAL GUARANTY OF PERFORMANCE

This Personal Guaranty of Performance (the "Guaranty") is entered into on 09/20/2024, by and between DAVID JR DESVERNEY (the "Guarantor") on behalf of SOLOGISTICS LLC (the "Seller") and MONETAFI, (the "Purchaser") (collectively, the "Parties").

WHEREAS, pursuant to the Agreement, the Purchaser has agreed to purchase a portion of Future Receipts of the Seller;

WHEREAS, the Guarantor is an owner, officer, director, or manager of the Seller, will directly benefit from entering into the Agreement;

WHEREAS, the Purchaser is not willing to enter into the Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees to the Purchaser prompt and complete performance of all obligations of the Seller under the Agreement;

NOW, THEREFORE, pursuant to the Parties desire to proceed with the Agreement and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

1. **Guaranty of Obligations**. The Guarantor hereby irrevocably, absolutely and unconditionally guarantees to the Purchaser prompt, full, faithful and complete performance and observance of all of Seller's Obligations under the Agreement. The Guarantor unconditionally covenants to the Purchaser in the event of a default or breach at any time by the Seller, the Guarantor shall be responsible for the Obligations and pay all damages and other amounts stipulated in the Agreement with respect to non- performance of the Obligations.

2. **Guarantor's Covenants**. The liability of the Guarantor shall not be impaired, abated, deferred, diminished, modified, released, terminated or discharged, in whole or in part, or otherwise affected, by any event, condition, occurrence, circumstance, proceeding, action or failure to act, with or without notice to, or the knowledge or consent of the Guarantor, including, without limitation:

   a. any amendment, modification or extension of the Agreement or any Obligation;

   b. any extension of time for performance, whether in whole or in part, of any Obligation given prior to or after default thereunder;

   c. any exchange, surrender or release, in whole or in part, of any security that may be held by the Purchaser at any time under the Agreement;

   d. any other guaranty in existence now or which may be executed by the Guarantor or any other third-party affiliated to the Seller;

   e. any waiver of or assertion or enforcement or failure or refusal to assert or enforce, in whole or in part, any Obligation, claim, cause of action, right or remedy which the Purchaser may, at any time, have under the Agreement or with respect to any guaranty or any security which may be held by the Purchaser at any time for or under this Guaranty or with respect to the Seller;

   f. any act, omission or delay by the Purchaser which may in any manner or to any extent vary the risk of the Guarantor or which would otherwise operate as a discharge the Guarantor as a matter of law;

   g. the release of any other guarantor from liability for the performance or observance of any Obligation, whether by operation of law or otherwise;

   h. the failure to give the Guarantor any notice whatsoever; or

   i. any right, power or privilege that the Purchaser may now or hereafter have against any person, entity or collateral in relation to the Agreement.

3. **Guarantor's Additional Covenants.**    The Guarantor will not dispose, convey, sell or otherwise transfer, or call the Seller to dispose, convey, sell or otherwise transfer, any material business assets of the Seller outside of the ordinary course of the Seller's business without the prior written consent of the Purchaser, which may be withheld by the Purchaser for any reason, until receipt of the entire Purchased Amount has been remitted to the Purchaser. The Guarantor shall pay to the Purchaser, upon demand, all expenses (including, without limitation, reasonable attorneys' fees and disbursements) of, or incidental to, or relating to the enforcement or protection of the Purchaser's rights hereunder or the Purchaser's rights under the Agreement. This Guaranty is binding upon the Guarantor and the Guarantor's heirs, legal representatives, successors and assigns and shall inure to the benefit of and may be enforced by the successors and assigns of the Purchaser. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of the Guarantor shall be unconditional and absolute, regardless

Guarantor # 1 Initials: _____    Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

of the unenforceability of any provision of any agreement between the Seller and the Purchaser, or the existence of any defense, setoff or counterclaim, which the Seller may assert. The Purchaser is hereby authorized, without notice or demand and without affecting the liability of the Guarantor hereunder, to at any time renew or extend the Seller's obligations under the Agreement or otherwise modify, amend or change the terms of the Agreement. Additionally, the Guarantor is hereby notified and consents that a negative credit report reflecting their credit record may be submitted to a credit-reporting agency if the Guarantor does not honor the terms of this Guaranty.

4. **Waiver: Remedies.** No failure on the part of the Purchaser to exercise, and no delay in exercising any right under this Guaranty shall constitute a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise any other rights. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event the Seller fails to perform any obligation under the Agreement, the Purchaser may enforce its rights under this Guaranty without first seeking to obtain performance for such default from the Seller or any other Guarantors.

5. **Acknowledge of Purchase.** The Guarantor acknowledges and agrees that the Purchase Price paid by the Purchaser to the Seller in exchange for the Purchased Amount of Future Receipts is a payment for an adequate consideration and is not intended to be treated as a loan or financial accommodation from the Purchaser to the Seller. The Guarantor specifically acknowledges that the Purchaser is not a lender, bank or credit card processor, and the Purchaser has not offered any loans to the Seller. The Guarantor waives any claims or defenses of usury in any action arising out of this Guaranty. The Guarantor acknowledges that the Purchase Price paid to the Seller is good and valuable consideration for the sale of the Purchased Amount.

6. **Governing Law, Venue and Jurisdiction.** This Guaranty shall be governed by and construed exclusively in accordance with the laws of the State of Connecticut, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Guaranty shall be instituted exclusively in any court sitting in the State of Connecticut, County of Fairfield, (the "Acceptable Forum"). The parties agree that the Acceptable Forum is convenient and submit to the jurisdiction of the Acceptable Forum and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Guaranty irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forum.

7. **Service of Process.**

**IMPORTANT NOTICE** - THIS SERVICE OF PROCESS PROVISION CONTAINS IMPORTANT CONSENTS AND WAIVERS. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS GUARANTY WITH YOUR LAWYER.

In addition to service of process under the laws of the Acceptable Forum, each Seller and Guarantor agree and consent to receive any court required service of process (including, without limitation, service of process (a) to commence litigation, (b) after litigation has been commenced for any court filings, and (c) for Purchaser obtaining a Prejudgment Remedy), through the following methods and manners (collectively "Acceptable Methods"):

1. Mail when sent by certified or registered mail, return receipt requested, Federal Express, or other overnight courier, addressed to the respective mailing addresses of each Seller and Guarantor, as contained in the Agreement, or in Purchaser's records, or any other mailing address provided to Purchaser in writing; and

2. Electronic mail (e-mail) when sent to the respective e-mail addresses of each Seller and Guarantor, as contained in the Agreement, or in Purchaser's records, or any other e-mail address provided to Purchaser in writing.

b. Each Seller and Guarantor make, agree and consent to the following representations and waivers:

1. Each Seller and Guarantor agrees that service of process made through either or both of the Acceptable Methods will constitute valid and lawful service of process on them without the necessity for service of process by other means (e.g., as provided for by statute or rules of court), but without invalidating service of process performed in accordance with such other provisions;

Guarantor #1 Initials: [Initial DJD]    Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

2.      Each Seller and Guarantor agrees and consents that service of process is deemed effective according to the following:

i.      If sent by certified or registered, mail return receipt requested, Federal Express, or other overnight courier, at the earlier of: (a) four calendar days after mailing, (b) when delivered, or (c) when actually received; and

ii.     If sent by e-mail, on the same day and time that the e-mail is sent;

3.      Each Seller and Guarantor represents that their respective mailing and e-mail addresses as contained in the Agreement, and/or as provided to Purchaser in writing, are correct and valid, they regularly receive and send correspondence from these addresses, and service sent to these addresses is expected to be received by them;

4.      Each Seller and Guarantor agrees and consents that Purchaser may serve process on them directly, including for the Acceptable Methods, without the necessity of having service completed by a marshal or indifferent person, but without invalidating service of process completed by a marshal or indifferent person, and each Seller and Guarantor waives any objection if Purchaser serves process directly on them; and

5. EACH SELLER AND GUARANTOR WAIVES ANY OBJECTION TO INSUFFICIENCY OF PROCESS, INSUFFICIENCY OF SERVICE OF PROCESS, OR PERSONAL JURISDICTION, WHETHER RAISED IN A MOTION TO DISMISS, OR OTHER SIMILAR MOTION, IF SERVICE IS CONDUCTED BY ANY METHOD OR MANNER CONTAINED IN THIS SERVICE OF PROCESS PROVISION OR ANY OTHER METHOD ALLOWED UNDER THE LAWS OF THE ACCEPTABLE FORUM.

8. **PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT IS $250,000 OR LESS.**

**IMPORTANT NOTICE** - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS GUARANTY WITH YOUR LAWYER.

a.      EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

1.      THE AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

2.      WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY AFTER, BUT NOT UPON, COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

3.      WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b.      EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) IS $250,000 OR LESS, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 APPLY TO THE AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY ONLY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER, AFTER, BUT NOT UPON, COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

c.      EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION

Guarantor #1 Initials: [ _DJD_ ]          Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

(INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

d.    EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH 7, INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY.

9. PREJUDGMENT REMEDY WAIVER WHERE SALES-BASED FINANCING AMOUNT EXCEEDS $250,000.

IMPORTANT NOTICE - THIS PREJUDMGENT REMEDY WAIVER MAY RESULT IN THE ATTACHMENT OF YOUR BANK ACCOUNTS WITHOUT PRIOR NOTICE OR COURT HEARING. YOU HAVE THE RIGHT TO REQUEST A COURT HEARING TO CONTEST ANY ATTACHMENT MADE THROUGH USE OF THIS PREJUDGMENT REMEDY WAIVER. YOU SHOULD CAREFULLY REVIEW THIS AND ALL OTHER PROVISIONS OF THIS GUARANTY WITH YOUR LAWYER.

a.    EACH AND EVERY SELLER AND GUARANTOR (COLLECTIVELY THE "UNDERSIGNED") ACKNOWLEDGES AND AGREES:

1.    THE AGREEMENT IS A "COMMERCIAL TRANSACTION" AS DEFINED IN CONNECTICUT GENERAL STATUTES SECTION 52-278a AS AMENDED, AND

2.    WAIVES ALL RIGHTS TO PRIOR NOTICE AND PRIOR OPPORTUNITY FOR A HEARING UNDER SECTIONS 52-278a TO 52-278g INCLUSIVE OF THE CONNECTICUT GENERAL STATUTES AS AMENDED, OR UNDER ANY SIMILAR LAW WHETHER STATE, FEDERAL OR CONSTITUTIONAL, IN CONNECTION WITH PURCHASER OBTAINING ANY PREJUDGMENT REMEDY UPON OR AFTER COMMENCING ANY LITIGATION IN CONNECTICUT AGAINST ANY ONE OF THE UNDERSIGNED, AND

3.    WAIVES ANY REQUIREMENT FOR THE POSTING OF A BOND, AND ANY RIGHT TO REQUEST THAT A COURT REQUIRE PURCHASER TO POST A BOND IN CONNECTION WITH ANY PREJUDGMENT REMEDY.

b.    EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT AS PART OF THIS PREJUDGMENT REMEDY WAIVER, BUT NOT AS AN EXCLUSIVE REMEDY, PURCHASER MAY ATTACH OR GARNISH THE UNDERSIGNED'S MONEY, AND OTHER PROPERTY, HELD IN ANY ACCOUNT AT ANY FINANCIAL INSTITUTION (INCLUDING WITHOUT LIMITATION AT ANY BANK, CREDIT UNION, OR OTHER FINANCIAL INSTITUTION (INDIVIDUALLY AND COLLECTIVELY "FINANCIAL INSTITUTION")) IF THE FINANCIAL INSTITUTION: (1) HAS A BRANCH, OFFICE OR ATM LOCATED IN CONNECTICUT, OR (2) IS REGISTERED WITH THE CONNECTICUT SECRETARY OF STATE, OR (3) IS AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT, OR (4) IS ENGAGED IN THE TRANSACTION OF BUSINESS IN CONNECTICUT.

c.    EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT: (1) PURCHASER'S EXTENSION OF SALES-BASED FINANCING TO SELLER(S) EXCEEDS $250,000, AND (2) THE PROVISIONS OF CONNECTICUT GENERAL STATUTES SECTION 36a-868 AND PUBLIC ACT 23-201 DO NOT APPLY TO THE AGREEMENT AND PREJUDGMENT REMEDY WAIVER, AND (3) PURCHASER MAY OBTAIN A PREJUDMGENT REMEDY, THROUGH USE OF THIS WAIVER UPON OR AFTER COMMENCING ANY LITIGATION AGAINST ANY ONE OF THE UNDERSIGNED.

d. EACH OF THE UNDERSIGNED ACKNOWLEDGES AND AGREES TO THE SERVICE OF PROCESS METHODS PROVIDED FOR IN THE SERVICE OF PROCESS PARAGRAPH 7, INCLUDING FOR PURCHASER OBTAINING ANY PREJUDGMENT REMEDY.

10. Jury Waiver. The Parties waive the right to a trial by jury in any court in any suit, action or proceeding on any matter arising in connection with or in any way related to the transactions of which this Guaranty is a part of or its

Initial

Page 18 of 27                Guarantor #1 Initials:    | DJD        Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

enforcement, except where such waiver is prohibited by law or deemed by a court of law to be against public policy. The Parties acknowledge that each Party makes this waiver knowingly, willingly and voluntarily and without duress, and only after extensive consideration of the ramifications of this waiver with their attorneys.

11. **Class Action Waiver**. The Parties waive any right to assert any claims against the other Party as a representative or member in any class or representative action, except where such waiver is prohibited by law or deemed by a court of law to be against public policy to the extent either Party is permitted by law or court of law to proceed with a class or representative action against the other. The Parties further acknowledge and agree that in the event a class action does occur: (i) the prevailing party shall not be entitled to recover attorneys' fees or costs associated with pursuing the class or representative action   (not withstanding any other provision in this Guaranty); and (ii) the Party who initiates or participates as a member of the class will not submit a claim or otherwise participate in any recovery secured  through the class or representative action.

12. **Severability**. In case any of the provisions of this Guaranty are found to be invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of any other provisions contained herein shall not in any way be affected or impaired. Any provision of this Guaranty that may be found  by a court having competent jurisdiction to be prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

13. **Opportunity for Attorney Review**. The Guarantor represents that they have carefully read this Guaranty and have had a reasonable opportunity to consult with their attorney. Guarantor understand the contents of this Guaranty and agrees to the terms and conditions of this Guaranty willfully and on their own accord.

14. **Counterparts and Facsimile Signatures**. This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one and the same agreement.

**AGREED AND ACCEPTED:**

| OWNER/GUARANTOR #1 | OWNER/GUARANTOR #2 |
|---|---|
| By: _Signed by:_ DAVID JR DESVERNEY _—80A08B954E8B4F5—_ | By: _____ |
| Name: DAVID JR DESVERNEY | Name: _____ |
| SSN: ███████ | SSN: _____ |

**Monetafi**

By:_____

Name:

Title:

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

## EXHIBIT C – ACH AUTHORIZATION

This ACH Authorization (the "ACH") is entered into on <u>09/20/2024</u>, by and between MONETAFI ("MONETAFI"), <u>SOLOGISTICS LLC</u> (the "Merchant") and <u>DAVID JR DESVERNEY</u> (the "Guarantor") (collectively, the "Parties").

1. **Bank Account Access.**    Prior to entering into this Agreement, as part of the underwriting process, MONETAFI will require access to the Merchant's bank accounts via online bank access. Once the Agreement is executed, MONETAFI requires daily viewing access to the Merchant's bank account(s) to confirm the appropriate processing of the Scheduled Remittances. This information is strictly confidential.

2. **Bank Login Authorization.** Upon execution of the ACH, the Merchant and Guarantor(s) understand that they are authorizing MONETAFI and its agents unlimited "view only" access into any and all bank accounts, credit unions or financial institutions linked directly or indirectly to the businesses or entities listed as parties of this Agreement for the duration of the Agreement. Access is limited to viewing accounts and does not permit MONETAFI to make any changes other than saving electronic transactional history. If at any time the Merchant or Guarantor changes their account credentials, they are required to provide MONETAFI updated credentials. Refusal to provide access to accounts shall be deemed a default of this Agreement.

3. **Account Holder Information.**

   a.  Account Holder Name: <u>SOLOGISTICS LLC</u>

   b.  Account Holder DBA: <u>SOLOGISTICS</u>

   c.  Account Holder Business Address: <u>10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557</u>

4. **Account Holder's Bank Information.**    If there are multiple bank accounts, please provide the following information for each bank account on a separate page and annex hereto.

   | | |
   |---|---|
   | a. Account Holder Bank Name(s): | Bank of America |
   | b. Bank Portal Website: | bofa.com |
   | c. Bank Account Number: | ███████7704 |
   | d. Bank Routing Number: | ████████ |
   | e. Bank Account Username: | ████████ |
   | f. Bank Account Password: | ████████ |
   | g. Security Question / Answer 1: | NA |
   | h. Security Question / Answer 2: | NA |

Guarantor #1 Initials: [Initial DJD]    Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

5. **Transaction Information**:

    a. Amount of Transaction: $62,500.00

    b. Effective Date: 09/20/2024

    c. Rate of Collection: weekly

6. **Complete ACH Authorization.**        As per the ACH, the undersigned hereby authorizes MONETAFI to electronically draft via the Automated Clearing House system the amounts indicated above from the account identified above. This authority will continue until withdraw in writing by the undersigned account holder. The undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. The Merchant acknowledges they are responsible for $35 rejection fee if items are returned for insufficient funds.

I, the undersigned, acknowledge and agree with these items, which are described in detail within the pages of this ACH.

**AUTHORIZED ACCOUNT HOLDER (MERCHANT)**

| FOR THE SELLER | | FOR THE SELLER | |
|---|---|---|---|
| By: | *Signed by:* DAVID JR DESVERNEY | By: | |
| Name: | DAVID JR DESVERNEY | Name: | |

Guarantor #1 Initials: _DJD_            Guarantor #2 Initials: _____

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



# ADDENDUM

This Addendum is entered on 09/20/2024, by and between, Monetafi and SOLOGISTICS LLC (the "Seller") and Funderzgroup.

Should any terms of this Addendum conflict with the Revenue Purchase Agreement dated 09/20/2024 the terms of this Addendum shall govern and be controlling. Capitalized terms used herein, but not otherwise defined, shall have the same definition as in the Revenue Purchase Agreement.

Seller warrants that it understands that Monetafi must engage a third-party, namely Funderzgroup, to manage the ACH withdrawals, reporting and deal tracking. For this service, Seller agrees to pay Funderzgroup a nominal fee of $299.00 per month. This amount is due on the first day of the Agreement and every subsequent thirty days until the Purchased Amount is paid in full to Monetafi.

**Merchant 1 (Print Name):** DAVID JR DESVERNEY      Date: 09/20/2024

Title: Owner      Signature:
Signed by:
DAVID JR DESVERNEY
80A08B954E8B4FB

**Merchant 2 (Print Name):**      Date: 09/20/2024

Title:      Signature:

Page 22 of 27

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

# THIS FORM MUST BE FILLED OUT BEFORE FUNDING.

Dear Seller,

Please fill out the form below with contact information and reference.

**Contact Information**

Guarantor Name: <u>DAVID JR DESVERNEY</u>

Phone Number: ███████████

Email: ███████████

**Personal Reference #1**

Name: Odion DesVerney

Phone Num█████████

**Personal Reference #2**

Name: Jonathan DesVerney

Phone Number: ███████████

**Business Reference #1**

Company Name: SOLogistics

Contact Name: Tuan Huynh

Business Phone ███████████

**Business Reference #2**

Company Name: SOLogistics

Contact Name: Robert Williams

Business Phone: ███████████

**Landlord Contact**

Company Name: NA

Contact Name: Frank Li

Business Phone: ███████████

**Emergency Contact**

Name: Odion DesVerney

Relationship: Wife

Phone Number: ███████████

Email: ███████████

**Initials:**

Initial
DJD

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



## ADDENDUM TO CONTRACT
## WAIVER OF PERSONAL SERVICE

This Addendum ("Addendum") is to be made a part of the purchase and sale of future receivables agreement (the "Contract") between Monetafi ("Purchaser") and SOLOGISTICS LLC ("Merchant") and DAVID JR DESVERNEY ("Guarantor") (collectively the "Parties") dated 09/20/2024.

1. **Merchant** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by Connecticut law. Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process.

2. **Guarantor** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by Connecticut law. Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Guarantor further agrees to waive any objection to the absence of formal service of process.

3. MERCHANT HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL")AT ops@sologistics-ops.com OR BY UNITED STATES POSTAL SERVICE AT 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557 OR BY ANY OTHER MEANS PERMITTED BY CONNECTICUT LAW.

4. GUARANTOR HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ops@sologistics-ops.com OR BY UNITED STATES POSTAL SERVICE AT 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557 OR BY ANY OTHER MEANS PERMITTED BY CONNECTICUT LAW.

5. Merchant or Guarantor shall notify Seller of any changes to its physical address or email address for service. Unless Purchaser is notified of a change in address, all addresses shall be presumed to be accurate.

6. This Addendum shall supersede any notice requirements in the Contract with respect to service of process.

For the Personal Guarantor

Signed by:

*DAVID JR DESVERNEY*

80A08B954E8BAFB...

Name: DAVID JR DESVERNEY

Date: 09/20/2024

For the Merchant

Signed by:

*DAVID JR DESVERNEY*

80A08B05E894EB...

Name: DAVID JR DESVERNEY

For the Personal Guarantor (#2)

Name:

Date: 09/20/2024

For the Merchant (#2)

Name:

Page 24 of 27

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

Date: 09/20/2024                          Date: 09/20/2024
Title: Owner                              Title:

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



# Notification of Assignment

**Attention: Accounting/Accounts Payable Dept.**

This letter is to inform you that the carrier named below uses Monetafi ("MONETAFI") as its financing company.

Merchant: SOLOGISTICS LLC a CA Limited Liability Company

(Case ID - 47144)

Merchant: SOLOGISTICS INC

Date: 09/20/2024

UNDER NO CIRCUMSTANCES SHOULD PAYMENT BE PROVIDED DIRECTLY TO THE MERCHANT.

Pursuant to a Receivable Sale Agreement with MONETAFI, the above-referenced Merchant has assigned all of its current and future accounts receivable to MONETAFI, including the accounts receivable for all current and future receivables for your company by the Merchant. Accordingly, you must remit payment for work produced directly to MONETAFI. This Assignment may only be rescinded through formal written notice if provided and signed by an authorized officer of MONETAFI.

Release of this Assignment cannot be provided by any party other than MONETAFI. Payment to the Merchant or any other party after your receipt of this notice will not discharge your legal obligation, pursuant to section 9-406 of the Uniform Commercial Code to pay MONETAFI. The Merchant will not be participating in any Quick Pay programs (even if they have previously) and all payments should be made to MONETAFI in a normal and timely matter.

All payments for work produced by this Merchant should be sent via ACH or mailed to MONETAFI at the following address:

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013



**Wire Deposit:**

BENEFICIARY BANK: BANK UNITED
ROUTING & TRANSIT#: 267090594
BENEFICIARY NAME: Monetafi
BENEFICIARY ADDRESS: 750 E MAIN ST 6TH FLOOR STAMFORD CT 06902
ACCOUNT #: 9856283460

**Payments by Mail:**

Monetafi
750 E MAIN ST 6TH FLOOR STAMFORD CT 06902

**Please make appropriate changes in your accounts payable systems to reflect this change and facilitate payments as directed herein.**

**Monetafi**

By:_____

Name: _____

SOLOGISTICS LLC

Signed by:
*DAVID JR DESVERNEY*
60A08B954E8B4FB...

Signature

Name:    DAVID JR DESVERNEY

Title:    Owner

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

## EXHIBIT D

DATE 09/20/2024

<u>LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A BLANKET SECURITY INTEREST:</u>

SOLOGISTICS INC

850 N 119TH AVENUE AVONDALE, AZ 85392, , ,

TAX ID: ███████████

BY: Signed by:

DAVID JR DESVERNEY

MERCHANT 1    DAVID JR DESVERNEY

BY:

MERCHANT 2

Docusign Envelope ID: 707192F0-F49F-4F2C-AD08-C6BEA0835013

===============================================================

# ADDENDUM TO MERCHANT AGREEMENT

In association with the Monetafi Future Receivables and Purchase Agreement # dated 09/20/2024, I, DAVID JR DESVERNEY, and a principal of

**Legal: SOLOGISTICS LLC**

**Located at: 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557**

Do hereby attest and agree to the following terms and conditions:

**Monetafi agrees to the following discount:**
- 1.10 30 day discount
- 1.20 60 day discount
- 1.30 90 day discount

**PAYING OFF:**
- MR ADVANCE $1,122,493.31
- CROMWELL $869,062.35
- LIFETIME $368,455.72

I hereby represent this statement to be true and accurate:
**AGREED AND ACKNOWLEDGED:**

Signature: _DAVID JR DESVERNEY_ Date:09/20/2024
Guarantor

Print Name: **DAVID JR DESVERNEY**

Company Name: SOLOGISTICS LLC

Address: 10420 MEADOW LARK AVE, MORENO VALLEY, CA 92557

Office Phone: _____

Cell Phone: _____

CERTIFICATE OF PREJUDGMENT ATTACHMENT
Pursuant to C.G.S. § 52-278f

State of Connecticut )
                     )    ss. Hartford          May 9, 2025
County of Hartford   )

THIS MAY CERTIFY that I have this date, by virtue of a WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY, AFFIDAVIT OF DEBT AND EXHIBITS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, AND EXHIBITS and the plaintiff's attorney, and to me directed and delivered, returnable to the Superior Court at Stamford bearing Return Date June 10, 2025,

NAMING **FUNDERZ GROUP, LLC D/B/A MONETAFI**, PLAINTIFF AND AGAINST **SOLOGISTICS, LLC AND DAVID JR. DESVERNEY**, DEFENDANTS

AND IN WHICH *THREE MILLION ONE HUNDRED SEVEN THOUSAND FIVE HUNDRED FORTY FOUR 00/100 ($3,107,544.00) DOLLARS*

Damages and costs of suit are claimed, made an attachment of all goods, accounts, property, and estate of the defendants and said **garnishee shall disclose on oath whether they have concealed in its hands the goods or estate of the said defendants, or are indebted to the defendants.**

SEE ATTACHED

Attest:

_____
Elizabeth J. Ostrowski
Connecticut State Marshal
Hartford County

A TRUE COPY
ATTEST:

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

State of Connecticut  )
                      )          ss. Glastonbury          May 9, 2025
County of Hartford    )

Then and by virtue hereof and by direction of the plaintiff's attorney, and a WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY, AFFIDAVIT OF DEBT AND EXHIBITS, AMENDED COMPLAINT, AMENDED STATEMENT OF AMOUNT IN DEMAND, AND EXHIBITS, and to me directed and delivered, I garnished to the value of *THREE MILLION ONE HUNDRED SEVEN THOUSAND FIVE HUNDRED FORTY FOUR 00/100 ($3,107,544.00) DOLLARS*, all goods, effects and money or credits due to the defendants, **SOLOGISTICS, LLC, SOLOGISTICS, INC., AND DAVID JR. DESVERNEY**, and in the hands or possession the within named garnishee, BANK OF AMERICA, N.A., at 211 New London Turnpike, in the Town of Glastonbury, by leaving it with Hiu, who is duly authorized to accept service for the within named garnishee, a verified true and attested copy of CERTIFICATE OF ATTACHMENT, WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY, AFFIDAVIT OF DEBT AND EXHIBITS, AMENDED COMPLAINT, AMENDED STATEMENT OF AMOUNT IN DEMAND, AND EXHIBITS.

The within are verified true and attested copies of the original CERTIFICATE OF ATTACHMENT, WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY, AFFIDAVIT OF DEBT AND EXHIBITS, AMENDED COMPLAINT, AMENDED STATEMENT OF AMOUNT IN DEMAND, AND EXHIBITS with my doings hereon endorsed.

Attest:

_____
Elizabeth J. Ostrowski
Connecticut State Marshal
Hartford County

A TRUE COPY
ATTEST:

ELIZABETH J. OS...
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

I, Elizabeth J. Ostrowski, am a State Marshal for Hartford County in the State of Connecticut and am authorized to serve civil process in this state.

In accordance with Connecticut General Statute § 52-59b, on 5/12/25, I served a verified true and attested copy of the original CERTIFICATE OF ATTACHMENT, WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY, AFFIDAVIT OF DEBT AND EXHIBITS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, AND EXHIBITS and a return of my doings thereon endorsed, upon the Secretary of the State of Connecticut, at 165 Capitol Avenue, Hartford, Connecticut, statutory agent for the within named defendant, DAVID JR. DESVERNEY.

Attest:

Elizabeth J. Ostrowski
Connecticut State Marshal
Hartford County

# EXHIBIT B


DE5-024-02-08
P.O. Box 15047
Wilmington, DE 19850-5047

**Important Information**

| | |
|---|---|
| | **Date** |
| | May 12, 2025 |
| | **Case name** |
| | SOLOGISTICS, LLC, SOLOGISTICS, INC. AND DAVID |
| | JR. |
| | **Case number** |

SOLOGISTICS LLC
2072 E SENTINEL PRIVADO
ONTARIO CA  91764-6642

**Reference number**
D050925001643

# We received a(n) CT Prejudgment Remedy for $3,107,544.00 on May 9, 2025, so unfortunately we've debited and/or restricted access to your account(s).

Due to the legal order, we're required to debit your account and hold your funds and/or restrict access to your safe deposit box(es). The creditor has claimed your assets to satisfy all or part of a debt, so we're legally required to hold your funds until they are sent to Hassett and George PC or until we receive instructions from the court.

If you have questions or need to dispute this legal order, please call Hassett and George PC at 860.651.1333. Keep in mind, we can't return the funds to you unless we receive a release or court order.

## Here are the details

| Safe Box number and/or Account number ending in: | State account located: | Amount attached: | Protected Amount: |
|---|---|---|---|
| 7720 | CA | $171.66 | $0.00 |

## What you need to know

- The issuing state of this legal order is Connecticut. The legal order may identify exemptions under the law of the state in which the order was issued.
- Our records show that you and all debtors named in the legal order have the following resident state(s): California. You may be eligible for certain exemptions based on your state of residence.
- Depending on the laws in your state, we may have to hold future deposits if the amount we've already held isn't enough to satisfy the legal order.
- Please notify any joint account holders, if applicable.
- You may wish to speak with your attorney about your options and obligations with this order.
- If one of the accounts is a CD or IRA, you may be charged early withdrawal penalties.
- You may still be charged maintenance fees on your accounts.

Bank of America and the Bank of America logo are registered trademarks of the Bank of America Corporation.
Bank of America, N.A. Member FDIC.

We're here to help

If you have questions about your account, please give us a call anytime at 800.432.1000.